No. 47,277

P. M. SANDERS, and JULIA SANDERS, his wife, *Appellees,* v. E. L. BIRMINGHAM, JR., W. N. BARTLETT, and RICHARD HINDERY, a partnership, d/b/a BIRMINGHAM-BARTLETT DRILLING COMPANY, and CARL S. ROHWER, *Appellants.*

(522 P. 2d 959)

Opinion filed May 11, 1974.

*Joseph W. Kennedy,* of Morris, Laing, Evans, Brock and Kennedy, of Wichita, argued the cause, and *Ralph R. Brock* and *Ken M. Peterson,* of the same firm, were with him on the brief for the appellants.

*Simon Roth, Jr.,* of Hays, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action seeking partial cancellation of an oil and gas lease and for release of 40 acres from the leasehold interest. The basis of the action is the alleged failure of the lessee to carry out its obligation to comply with the implied covenant of further development. The essential facts are not in dispute and are as follows: On May 31, 1955, the plaintiffs-appellees, P. M.

Sanders and Julia Sanders, his wife, executed an oil and gas lease to the defendants-appellants, E. L. Birmingham, Jr., W. N. Bartlett and Richard Hindery, a partnership, doing business as Birmingham-Bartlett Drilling Company, and Carl S. Rohwer, covering the Southwest Quarter of Section 35, Township 13 South, Range 17 West, in Ellis county. In this opinion we will refer to the plaintiffs-appellees, as Sanders or the lessor. We will refer to the defendants-appellants as Birmingham-Bartlett or the lessee. During the first half of 1956 the lessee drilled four producing oil wells on the east 40 acres of the quarter section. On December 15, 1959, Robert C. Allan, as attorney for the lessor, wrote a letter to the lessee which in substance demanded that the lessee take immediate steps to further develop the lease. On December 16, 1959, Lester L. Morris, as attorney for the lessee, wrote to Allan a letter which stated in pertinent part as follows:

"Birmingham-Bartlett Drilling Company has consulted me with reference to your letter of December 15, 1959, concerning your demand for release of the above mentioned lease as pertains to the West 120 acres of the above described property.

"I have gone over all the facts concerning this lease, and particularly with reference to the drilling program and location of the wells on the above lease, as well as the wells in the surrounding area. From the facts available I am of the opinion that Birmingham-Bartlett Drilling Company has reasonably developed the property, and that there is no implied obligation upon them to drill any additional wells *at this time*. However, rather than to have litigation over the matter, I would recommend to Birmingham-Bartlett Drilling Company, that they give thought to releasing the W/2 SW/4 of Sec. 35-13S-17W., Ellis County, Kansas, but I could not recommend that they release the W/2 E/2 SW/4 of said section 35.

"You might take the matter up with your client and if he is willing to consider my proposal I will then take the matter up with Birmingham-Bartlett and try to work out an arrangement whereby the lease on the W/2 SW/4 of said Sec. 35 can be released of record. I, of course, would not want to be faced with a law suit on the W/2 E/2 SE/4 of Sec. 35; if we are going to have a law suit on that, then I think client should stand by its guns on the entire quarter section." (Emphasis supplied.)

Allan wrote in reply a letter to Morris which stated in part as follows:

"I have gone over this matter again with my client and *he is agreeable to avoiding litigation If your client will release only the West Half of this Quarter Section.*

"You suggested in your letter that you would recommend the same to your client and we wish that you would go ahead and discuss it with them and contact us when any decision has been reached." (Emphasis supplied.)

On January 11, 1960, Morris wrote to Allan enclosing a release signed by the lessee releasing the west 80 acres of the quarter section covered by the oil and gas lease. This letter is stated as follows:

"I acknowledge receipt of your letter of January 7, 1960 in which you state that your client would be willing to accept a release of the above mentioned lease as pertains to the W/2 SW/4 of Sec. 35-13S-17W., Ellis County, Kansas to avoid litigation. I have secured the release which was executed by all of the partners of Birmingham-Bartlett Drilling Co. and Chas. H. Keevert, as we understand Chas. H. Keevert had an interest in the lease.

"If this is satisfactory go ahead and record it and then send me statement for the amount of recording fee and I will see that you are reimbursed."

The lessor thereupon recorded the release of the west 80 acres of the quarter section.

Approximately 12 years later on June 30, 1972, the lessor filed a petition in this action for partial cancellation of the lease as it pertained to the west 40 acres of the east half of the quarter section and for release of that 40 acres from the leasehold interest. The basis of the lessor's claim was the failure of the lessee to develop fully the property in violation of the implied covenant of further development. The lessee filed its answer in which it denied that it had failed to develop fully the leasehold interest in violation of any implied covenant in the lease and, by way of affirmative defense, alleged an accord and satisfaction relying upon the correspondence between the lessor's attorney, Robert C. Allan, and the lessee's attorney, Lester L. Morris, which is described above. On February 21, 1973, the lessee filed a motion for summary judgment based on the defense of accord and satisfaction. This motion was overruled by the trial court just before commencement of the trial. With the pleadings in this posture the parties proceeded to trial before the court on April 23, 1973. The parties filed a joint stipulation as follows:

"(1) Southwest Quarter of Sec. 35, 13 17 Ellis County, Kansas, is owned by P. M. Sanders and it is so stipulated.

"(2) It is stipulated that P. M. Sanders on May 31, 1955 executed an oil and gas lease to E. L. Birmingham, Jr., et al. covering above described property reflected as plaintiff's exhibit 1.

"(3) It is stipulated that there are four producing oil wells in center of regular ten acre location located in E/2 of E/2 of SW/4. These wells were drilled and completed on following dates:
Sanders #1—Jan. 18, 1956
Sanders #2—Feb.    , 1956
Sanders #3—Feb.    , 1956
Sanders #4—May 18, 1956

"(4) It is stipulated that no dry holes were drilled by defendants on SW/4.

"(5) It is stipulated defendants exhibit 1, 2 and three reflect location of all producing wells and dry holes in area shown on exhibits including Sanders SW/4 and shows elevation top of Lansing and Arbuckle producing formation.

"(6) It is stipulated that correspondence attached to defendants Answer reflect correspondence between Law Firms involved.

"(7) It is stipulated that W/2 of SW/4 was released as indicated by correspondence by release recorded Jan. 8, 1960 in Book 185 page 17 in Register of Deeds Ellis Co., Ks."

Attached to this stipulation were three maps which showed all producing wells, dry holes and the elevation tops of the Lansing and Arbuckle producing formations in section 35 and in the half sections abutting section 35 on all four sides. These maps showed the four producing wells on the east 40 acres of the southwest quarter of section 35, six producing wells in the west half of the southeast quarter of section 35, and nine producing wells in the half section directly to the south of section 35.

The lessor then called two witnesses in support of its petition. P. M. Sanders, a lessor, testified in substance that in the fall of 1959 he had authorized his son Ed to exert pressure upon the lessee to either do additional drilling or release the undeveloped land. Mr. Sanders, age 80, had recently sustained an illness which caused him to be quite forgetful and he had no recollection of having had personal contact with the attorney, Mr. Allan. He did recall that the west 80 acres of the southwest quarter of section 35 were released by the lessee and that such release was probably the end result of his son's efforts. He denied any agreement as to the 40 acres involved in this case.

The only other witness called by the lessor was another son, Donald L. Sanders. The entire testimony of Donald L. Sanders, as set forth in the record on appeal was as follows:

"Direct Examination of Donald L. Sanders by Simon Roth, Jr.

"My name is Donald L. Sanders and I work for O'Neil Tank Company. I am also an electrician. My duties for O'Neil Tank Company consist of designing, building and the installing the cost automation for the company in the oil patch. My father is P. M. Sanders . . .

"Q. Have you contacted and talked to people regarding development of this acreage?

"A. Yes, sir.

"Q. And discussed with them the possibility of further developing it?

"A. Yes . . .

"Q. Don, would you yourself be interested, knowing what you know, in developing further this acreage?

"MR. BROCK: Objection your Honor. I don't believe the man has qualified himself either as an expert through geology or petroleum engineering, nor as a practical operator with experience of exploring for additional oil and gas.

"THE COURT: Overruled. You may answer yes or not.

"A. Yes.

"Q. And what are you basing this on, Don?

"A. Well due to the location and also I think—

"MR. BROCK: Objection, your Honor. He is now trying to give an opinion on the location.

"THE COURT: The question does not go to his qualifications as an expert. The objection is overruled.

"Q. You may answer.

"A. Well I believe you are well aware that Birmingham's buy location. This is why they have acquired the map that they have there.

"Q. Based on what information, Don? Answer the question.

"A. Yes I would.

"Q. And is there anything else which would lead you to this opinion and your willingness to develop this?   .   .   .

"A. Well basically they tell us there is a need for oil.

"MR. BROCK. Objection, immaterial.

"THE COURT: Sustained.

"Q. What other information, Don, do you have available to you that would—

"A. Well, I have people that are interested—

"MR. BROCK: Objection, your Honor, that is hearsay.

"THE COURT: Overruled.

"A. Like I say, this one person is deceased now, Leo Dreiling, Jr., which was Mr. Dreiling's manager at the time, and his decisions held. And the next person is Melvin Schartz. He is a lease broker in Great Bend. He leases continually every day.

"MR. BROCK: Your Honor, I hate to be objecting all the time, but he is testifying that these people are interested, and that is hearsay. There is no way to cross examine on that.

"THE COURT. It may be foundation for later testimony.  Overruled.

"A. And those are the only people I contacted so far.   .   ."

The lessor called no other witnesses and rested its case.

The lessee immediately moved for an involuntary dismissal for the reason that the evidence was insufficient to support a judgment in favor of the lessor. The trial court overruled the motion. The lessee then renewed its motion for involuntary dismissal which motion was overruled by the court. The lessee then announced that it was its desire to stand on the motion and it did not desire to introduce any evidence. The lessee did not offer any evidence in opposition to the evidence presented by the lessor. Thereupon the trial court entered judgment in favor of the lessor as plaintiff, declaring that unless the lessee instituted the drilling of an oil and

gas well within 90 days on the 40 acres in dispute, the oil and gas lease would be declared released and canceled insofar as such lease covers that 40 acres. The lessee has appealed to this court.

The first point raised on this appeal is that the trial court erred in overruling the lessee's motion for summary judgment because the evidence clearly established that the parties had previously compromised and settled the lessor's claim and that the lessor ratified the settlement agreement. Stated in another way the issue is whether or not the evidence establishes an accord and satisfaction in 1960 which as a matter of law bars this action filed in 1972. The lessee takes the position that the action is barred because the undisputed correspondence between the attorneys of the parties shows an agreement to compromise and settle the lessor's claim; that a release of the west 80 acres of the quarter section was executed by the lessee in reliance upon the agreement and understanding that there was to be no litigation between the parties; and that the settlement agreement as contained in the correspondence plus the executed release constituted a complete accord and satisfaction. The lessor contends that the correspondence between the parties' attorneys does not establish a complete settlement agreement but that only the west 80 acres of the quarter section were involved; that in 1960 there was no meeting of the minds as to the remaining 40 acres; that there was no written binding release prepared and that half a sentence in one letter is insufficient to constitute an accord and satisfaction.

We have held that to constitute an accord and satisfaction there must be an offer in full satisfaction for the obligation accompanied by such acts and declarations or under such circumstances that the party to whom the offer is made is bound to understand that if he accepts it, it is in full satisfaction of and discharges the original obligation. (*Harrison v. Henderson,* 67 Kan. 194, 72 Pac. 875; *Amino Brothers Co. Inc. v. Twin Caney Watershed District,* 206 Kan. 68, 476 P. 2d 228.) To have an accord and satisfaction there must be a complete meeting of the minds that the claim of the party has been fully satisfied and discharged. We have concluded on the basis of the evidentiary record before us that the trial court did not err in its finding that the evidence did not establish an accord and satisfaction in 1960 which as a matter of law barred the present action in 1972. In reaching this conclusion we have noted particularly the letter of Lester L. Morris dated December 16, 1959, quoted above, which states that there is no implied obli-

gation upon the lessee to drill any additional wells *at this time*. It seems to us that the agreement of the parties must be interpreted in the light of the situation as it existed in 1960 and that it has not been clearly shown that the lessor intended forever thereafter to release the lessee of its duty to further develop the leasehold at all times in the future. The implied covenant to further develop the lease is a *continuing* obligation during the term of the lease. The obligation of the lessee thereunder must be judged in the light of the circumstances as they might exist at various times during the term of the lease. We believe that in view of this continuing obligation the lessor had the right to show a change in circumstances between 1960 and 1972 which would justify the enforcement of the lessee's implied covenant to further develop the lease. It should also be noted that the burden of proof on the defense of accord and satisfaction was upon the lessee. We hold that although there may have been an accord and satisfaction as to further development of the lease in 1960, such agreement did not as a matter of law bar this action in 1972 to enforce the lessee's implied covenant to further develop the lease at that time.

The lessee's second point on this appeal is that the trial court erred in overruling its motion for involuntary dismissal because there was no substantial evidence to establish that a knowledgeable and prudent operator would have further developed the leased acreage. Before examining the evidence presented in the record before us we should consider the principles of law pertaining to the duty of a lessee under an oil and gas lease to further develop the leased property and the relative rights and responsibilities of the parties in litigation involving the implied covenant to further develop. The principles pertaining to this subject are set forth fully in *Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 133 P. 2d 95; *Temple v. Continental Oil Co.*, 182 Kan. 213, 320 P. 2d 1039; *Renner v. Monsanto Chemical Co.*, 187 Kan. 158, 354 P. 2d 326; and *Stamper v. Jones*, 188 Kan. 626, 364 P. 2d 972. These rules may be briefly summarized as follows:

(1) In the absence of an express provision in the lease there is an implied covenant by the lessee that the tract will be prudently developed.

(2) Neither the lessor nor the lessee is the sole judge of what constitutes prudent development of the tract. Whatever would be reasonably expected of operators of ordinary prudence, hav-

ing regard to the interests of both lessor and lessee, is what is required.

(3) The burden of proof is upon the lessor to establish by substantial evidence that the covenant has been breached by the lessee.

(4) The lessor must prove that the lessee has not acted with reasonable diligence under the facts and circumstances as they exist at the particular time.

(5) In determining whether or not there has been prudent development under the lease there are various pertinent factors to be considered—all of the facts and circumstances which would affect the reasonableness of an ordinarily prudent operator's position in connection with development of the particular tract involved.

Some of the factors which have been suggested for consideration by the Kansas decisions are the following: The quantity of oil and gas capable of being produced from the premises as indicated by prior exploration and development; the local market and demand therefor; the extent and results of the operations, if any, on adjacent lands; the character of the natural reservoir—whether such as to permit the drainage of a large area by each well—and the usages of the business. Among the economic factors to be considered are the cost of drilling, equipment and operation of wells; cost of transportation, cost of storage, the prevailing price; general market conditions as influenced by supply and demand or by regulation of production through governmental agencies. (*Fischer v. Magnolia Petroleum Co.*, supra, citing 2 Summers Oil and Gas, Perm. ed., pp. 377, 378.) In the various cases the emphasis has shifted from one factor to another depending on the particular factual circumstances in each case.

With these principles in mind the issue presented in the second point is as follows: Does the record contain substantial evidence to justify the finding of the trial court that a knowledgeable and prudent operator would have further developed the leased acreage. We have defined "substantial evidence" as evidence which possesses something of substance and relevant consequence and which furnishes a substantial basis of fact from which the issues tendered can be reasonably resolved. (*Delight Wholesale Co. v. City of Prairie Village*, 208 Kan. 246, 491 P. 2d 910.) When the record in this case is carefully examined we find that the following facts have been established by the lessor:

(1) Four producing oil wells were drilled by the lessee on 10-acre tracts located on the east 40 acres of the southeast quarter during January, February and May of 1956.

(2) No further development on the leased acreage has occurred by action of the lessee for a period of 17 years.

(3) No dry holes were drilled by the lessee on the southwest quarter including the 40 acres involved in this litigation.

(4) The lessor had operators who were willing to further develop the 40 acres.

(5) The maps introduced into evidence showed producing wells in the southeast quarter of section 35 and in the north half of the section immediately south of section 35.

It is our judgment that considering this evidence with all reasonable inferences therefrom made in favor of the lessor such evidence does not constitute substantial evidence sufficient to justify the finding of the trial court that the lessee breached its obligation to further develop the leased property. There is no evidence whatsoever in the record that there was a reasonable expectation of obtaining production from the acreage in litigation or to show the quantity of oil which might reasonably be expected from such production. There was no evidence as to the reservoir characteristics of the area such as the producing formation, the thickness of pay, location of oil-water contact (if any), source of reservoir energy, production history, initial test potential of producing wells, or porosity, all of which were deemed necessary to be shown by this court in *Temple v. Continental Oil Co.*, supra. Likewise there was no evidence of well pressure or permeability as was emphasized in *Myers v. Shell Petroleum Corp.*, supra. The maps which were introduced into evidence show only well locations in the Arbuckle and Lansing formations. They do not show which of the producing wells are producing from the Arbuckle and which from the Lansing formations, nor the amount of oil production at the time of the trial. There was no evidence whatsoever to show whether or not the existing wells can eventually drain the lessor's undeveloped acreage. There was no evidence whatsoever as to the economic factors involved in drilling, equipping or operating an additional well or whether any oil production would reasonably be expected to be profitable to the lessee. As we have pointed out above the burden of proof was upon the lessor to prove his case. It was not the burden of the lessee to bring forth

evidence covering the various factors which have been held significant in our previous decisions. In our judgment there has been a failure of proof in this case since the lessor failed to introduce substantial evidence sufficient to show that a knowledgeable and prudent operator would have further developed the leased acreage under the circumstances. The findings and the judgment of the district court cannot be upheld on this appeal. On the record before us judgment must be entered in favor of the appellants as a matter of law.

The judgment of the district court is reversed.

SCHROEDER, J., dissenting from syllabus ¶ 4 and the corresponding portion of the opinion.