No. 55,874

A. W. ADOLPH and DELIA ADOLPH, *Appellees,* v. RALPH STEARNS, LLOYD L. HARP, RAY STEARNS and LINDA STEARNS, HAROLD WELCH and FRANCES A. WELCH, DICK NETERCOT and JAYNE NE-TERCOT, LEONARD R. JOHNS and ANNA JOHNS, LLOYD R. NUCKOLLS and ALEEN M. NUCKOLLS, RONALD HOPKINS and BETH D. HOPKINS, DONALD STEARNS and RUTH STEARNS, ROBERT STEARNS and MARY STEARNS, and LLOYD NUCKOLLS, *Appellants.*

(684 P.2d 372)

Opinion filed June 8, 1984.

*Harold V. Matney,* of Kansas City, argued the cause, and *Jon K. Lowe,* of Ottawa, was with him on the briefs for appellants.

*John L. Richeson,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: This action was commenced by the landowners to

cancel an oil and gas lease for violation of the lease covenants to produce or develop and operate the premises. The trial court partially granted the landowners summary judgment, finding the lessees had failed to produce oil or gas in paying quantities. The remaining issues of whether the lessees' efforts to operate or develop the leased premises had extended the primary term were tried to the court. The trial court found in favor of the lessors, voiding the oil and gas lease, ordering the lessees to plug the wells and restore the premises, and awarding statutory damages and attorney fees pursuant to K.S.A. 55-202. Lessees appeal.

The plaintiffs/appellees, A. W. Adolph and Delia Adolph (lessors), are the owners of 250 acres of land situated in Franklin County, Kansas. Defendants/appellants (lessees) are the successors to the original lessees.

July 12, 1979, Charles Gorges d/b/a Pioneer Oil Company obtained an oil and gas lease from the landowners. The lease was on a printed form; all typed portions of the lease were prepared in advance by Charles Gorges, Don Gorges, Mr. Tillery or Mr. Schmanke. The landowners required certain changes to the oil and gas lease agreement: (1) the term of the lease be set at one year, and (2) the deferral for drilling be advanced from February 12, 1980, to September 12, 1979. The modifications were approved by the parties. By agreement with Charles Gorges, Tillery and Schmanke, each had an interest in the well for their efforts in obtaining the lease for Pioneer. The landowners were unaware of this agreement. In February of 1980, the lease was assigned by Pioneer Oil Company to Lloyd R. Nuckolls. The defendants/appellants acquired their interest in the lease by later assignments.

Lessees commenced drilling within sixty days after signing the lease. A core sample was obtained and when completed the well was pumped. Well No. 2 was drilled and placed in production in May, 1980. Permanent tanks were set north of the road that divided the lease. Wells No. 1 and No. 2 produced enormous quantities of salt water which contained only a slight scum of oil. During July, 1980, thirteen loads of water, at sixty-six barrels each, were hauled off the lease. Seventy-six barrels of oil were sold. Because of the heavy gravity of the oil, an adjustment based upon cost to make the oil marketable was required. After adjustment the oil purchaser paid for 22.8 barrels. This was the only

production obtained between the lease signing and the forfeiture of the lease by the court.

In January, 1981, lessees decided to drill wells No. 3 and No. 4. Well No. 3 was commenced about February 25, 1981, and completed in April or May of that year. It produced more salt water and little oil. Well No. 4 was completed within two to four weeks after No. 3. Well No. 4 caved in and had to be dug and washed out. Each well, when placed in production, only increased the output of salt water.

In an effort to increase production of oil from the lease, the lessees attempted the following: (1) continued pumping to reduce the salt water; (2) prepared an existing well from a prior lease for injection of salt water; no permit was obtained by the lessee; (3) tried K-4 chemical, which caused the oil to thin momentarily; and (4) installed gas lock anchors with an extra ball to keep the wells from sanding up. The lessees contacted individuals to obtain advice on increasing production. A student from Oklahoma University made an analysis of the lease which became his master's thesis for the university; this thesis resulted in the drilling of wells No. 3 and No. 4. Plans for increasing the pump size on each well and water flooding the field were contemplated by the lessees.

Cold and wet weather interfered with the lessees' attempts to increase production. Pump motors burned out, lines froze, wet ground impeded efforts to increase production, and during the summer of 1981, the area was flooded.

The trial court determined that lessees had actually two plans for development. Plan No. 1 was to "pump it, pump it, pump it" and see if the salt water could be depleted. Plan No. 2 was to use a bigger pump jack. Neither plan succeeded. Due to repeated motor burnouts, plan No. 1 was not successful. Plan No. 2 was never initiated.

Personality conflicts developed between several of the lessees and A. W. Adolph. Adolph's attitude was described as congenial one day and demanding the next. At one point, Adolph had been hired by the lessees to assist in pumping. When he was ordered to clean up an oil spill on his land, Adolph lost his temper. He requested the property not be rutted when wet and that gates be kept closed. The court determined Adolph's demands were not unusual for a landowner. No threats of bodily harm were

directed by Adolph to any person. None of the lessees' efforts were totally frustrated by his alleged interference.

Lessors determined the lessees had failed to comply with the expressed covenants of the lease agreement. Beginning January 27, 1982, the lessors published their intent to cancel the lease by placing such notice in the *Ottawa Herald* for three consecutive weeks pursuant to K.S.A. 55-201. In March, 1982, A. W. Adolph directly notified the lessees of his intent to cancel the lease. The lessors filed this action May 11, 1982. They requested the oil and gas lease be declared void, their title be quieted, their land be restored to its pre-drilling condition, and statutory damages allowed under K.S.A. 55-202.

The lessors filed a motion for summary judgment. The trial court granted partial summary judgment, finding the lessees had not produced oil and gas in paying quantities. The trial court did not determine whether the lease property was being developed and operated as required under the lease agreement. The remaining issue was tried to the court on April 12 and 14, 1983. The trial court found for the lessors, deciding the oil and gas lease was void, and granted the lessors their requested remedies. The lessees appeal.

The appellants' major contention is that the habendum clause in the lease does not require production in paying quantities for extension of the lease beyond the primary term. The appellants argue production is not required since they have developed and operated the leased property as required.

The habendum clause in this lease provides:

"It is agreed that this lease shall remain in full force for a term of one years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, or the premises are being developed or operated."

The habendum clause was printed on a form lease provided by Tillery or Schmanke. Similar clauses from leases and deeds have been cited in other Kansas cases but the exact question raised by the appellants has not been previously addressed. See, *e.g., Pray v. Premier Petroleum, Inc.,* 233 Kan. 351, 662 P.2d 255 (1983); *Classen v. Federal Land Bank of Wichita,* 228 Kan. 426, 617 P.2d 1255 (1980), 9 A.L.R. 4th 1106.

It must be remembered that the large expense incident to exploration and development is born by the lessees, not the lessors. Such expense justifies the lessees to proceed with rea-

sonable caution and proper regard for their own interests, as well as the lessors'. There is no implied duty on the lessees to engage in an undertaking which is not profitable to them even though it might, or would, result in a profit to the lessors. It is only to the end of mutual benefit or profit to both the lessors and lessees that the implied covenants require reasonable diligence to produce and develop.

The terms "produced and developed" have been discussed previously by the court when reviewing expressed and implied covenants. This court, when speaking of these covenants, places great emphasis on the individual property rights and construes oil and gas leases to promote development and prevent delay upon the theory that the lessor has a right to have his land developed as rapidly as possible. To insure that end when a lease itself does not contain specific expressions regarding production or development, the law determines the intention of the parties and the court has imposed such duties upon the lessees. The legislature as a matter of public policy has by statute included the implied covenant to explore and develop all oil and gas leases when such covenants are not contained in the lease. K.S.A. 55-223.

Whether a lessee has performed his duties under the expressed or implied covenants is a question of fact. In absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent, or the diligence with which, the operations and development shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence would do under the same or similar circumstances, having due regard for the interests of both. *Fischer v. Magnolia Petroleum Co.,* 156 Kan. 367, 133 P.2d 95 (1943).

When the trial court heard the lessors' request for summary judgment, it divided the habendum clause of the lease into two parts. It first determined under the motion for summary judgment, the lessees had not produced oil and gas within the term specified in the lease. The second question whether the premises had been developed or operated was to be determined at trial.

The trial court was correct when it granted the lessors' motion for summary judgment. The requirement in the habendum clause of the lease of production in paying quantities had not

been met. Under the lease, the primary term of one year had expired. For the lease to be held after the expiration of the primary term by production required that the production be in paying quantities. To determine if there is production in paying quantities, one applies an objective test. The objective test is based upon a mathematical test. For an in-depth discussion of the objective test see *Reese Enterprises, Inc. v. Lawson,* 220 Kan. 300, 314-15, 553 P.2d 885 (1976).

Two factual questions remained to be determined at the trial: (1) what were the circumstances surrounding the preparation and the signing of the lease by the plaintiff; and (2) had the activity of the lessees to develop or operate the premises extended the primary term of the lease?

The lessees claim, where practical, the court should avoid an interpretation against the development of the resources of the property involved, citing *Betterment Co. v. Blaes,* 75 Kan. 69, 88 Pac. 555 (1907).

The trial court found that the lease had been prepared by either Charles or Don Gorges, operators of Pioneer Oil, or by Ray Tillery and/or Roger Schmanke, promoters who received an overriding royalty interest for their efforts. The lessor had not prepared the lease agreement.

The lessor who alleges breach of the covenant to develop or operate, contained in the habendum clause of the oil and gas lease, has the burden to show by substantial, competent evidence the lessee has breached the agreement. He must prove the lessee has not acted with reasonable diligence under the circumstances.

Familiar rules governing the construction of oil and gas leases are: the intent of the parties is the primary question; meaning should be ascertained by examining the document from all four corners and by considering all the pertinent provisions, rather than by a critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof. *Jackson v. Farmer,* 225 Kan. 732, 594 P.2d 177 (1979). Because the lessees had prepared the lease, the trial court construed any ambiguities in the terms of the lease favorably to the lessors.

Development has been defined as "[t]he drilling and bringing into production of wells in addition to the exploratory or discovery well on a lease." 8 Williams and Meyers, Oil and Gas Law, p. 185 (1982).

The same volume contains this definition of operation:

"This term, frequently found in oil and gas leases, is not a term of art with a clearly understood definition. In most instances it appears to refer to activity leading to the production of oil and gas." 8 Williams and Meyers, p. 507.

All parties cite an Oklahoma case in which the phrase "develop or operate" is construed. In *Prowant v. Sealy*, 77 Okla. 244, 187 Pac. 235 (1919), the Oklahoma Supreme Court construed the phrase "develop or operate" to mean that if drilling operations were commenced on the premises within the primary term of the lease for the purpose of discovering oil or gas and were still being prosecuted in good faith at the expiration of the primary term, the primary term would be extended during the continuance of such drilling operations, or in the case of the discovery of oil or gas, as long as the same was produced.

A treatise on oil and gas law, 2 Summers, Oil & Gas § 300.1, p. 252 (rev. perm. ed. 1959) contains this statement:

"A first form is limited to a change in the habendum by the addition of such expressions as 'said premises developed and operated', 'operations are continued thereon' or 'as long after the commencement of operations as said premises are being operated for the production of oil or gas.' These clauses have been construed as meaning that if a lessee commences a well within the primary term of a lease and carries on the drilling operations diligently and in good faith, although he does not actually complete the well and secure production until after the end of the primary term, the lease remains in force until he completes the well, and if he secured production therefrom, as long as production in paying quantities continues."

See *Statex Petroleum v. Petroleum, Inc.*, 308 F.2d 815 (10th Cir. 1962).

The question here is whether the lessees' development and operations were being prosecuted diligently and in good faith when the lessors sought to cancel the lease. The habendum clause in the lease required the lessees to meet this standard, and satisfying that standard depends on the facts of each case.

The trial court determined the lessees had failed to develop or operate the lease. The only results of the lessees' efforts were the production of too much salt water and too little oil. The possi-

bility of future development and operation by the lessees depended upon prospective but unassured profits and possibilities. Under the circumstances the trial court's termination of the lease was appropriate.

The lessees claim A. W. Adolph did not attempt to cancel the lease after the primary term of one year; that the lessors' silence gave rise to estoppel; and under the circumstances lessors should have made a disclosure. *Service Oil Co., Inc. v. White,* 218 Kan. 87, 97, 542 P.2d 652 (1975). The lessees contend Adolph should be estopped from canceling the lease because they expended funds for drilling wells No. 3 and No. 4 in reliance on Adolph's acts, which lessors' acts led the lessees to believe the lease would be extended beyond the primary term. In addition, lessees contend, the lessors by prohibiting certain people from coming onto the land interfered with the drilling operations.

Equitable estoppel was discussed in *Iola State Bank v. Biggs,* 233 Kan. 450, Syl. ¶ 4, 662 P.2d 563 (1983), where we stated:

"Equitable estoppel is the effect of the voluntary conduct of the person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it has a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

In the case of *Indian Territory Operating v. Bridger Petro. Corp.,* 500 F. Supp. 449, 450-51 (W.D. Okla. 1980), the federal district court when discussing estoppel stated:

"The courts have long recognized that acts of the lessor may prevent him from claiming a termination or cancellation of an oil and gas lease against his lessee. *Eggleson v. McCasland,* 98 F. Supp. 693 (E.D. Okl. 1951) (demand for further drilling, receipt of royalty payments); *Eagle Oil Co. v. Sinclair Prairie Oil Co.,* 24 F. Supp. 612 (N.D. Okl. 1938), aff'd 105 F.2d 710 (10th Cir. 1939) (accepting royalty payments, executing division orders); *Durkee v. Hazan,* 452 P.2d 803 (Okl. 1968) (acquiescence in allegedly altered lease and acceptance of royalty payments); *Labbe v. Magnolia Petroleum Co.,* 350 S.W.2d 873 (Tex. Civ. App. 1961) (recognizing validity of lease after lapse); *Anderson v. Talley,* 199 Okl. 491, 187 P.2d 206 (Okl. 1947) (receipt of royalty payments with knowledge of breach); *Cadillac Oil & Gas Co. v. Harrison,* 196 Ky. 290, 244 S.W. 669 (1922) (acquiescence in good faith development after expiration of lease); *Scott v. Signal Oil Co.,* 35 Okl. 172, 128 P. 694 (1912) (acceptance of royalty payments from assignee, even though assignment was void)."

See *Bloom v. Rugh,* 98 Kan. 589, 160 Pac. 1135 (1916).

There is no definite rule governing estoppel which can be applied to every situation. There are few, if any, relationships of which the law takes cognizance where all are not affected by some degree by the principles of estoppel. Since the principles of estoppel run through all transactions, it cannot be determined by any fixed or definite rule. Where the question is raised each case must be determined on its own individual facts. The trial court determined under these facts the lessors were not estopped.

The trial court determined from the facts: (1) the lessees had failed to produce oil or gas in paying quantities; (2) the lessees had failed to develop or operate the lease; and (3) the lessors were not estopped by their actions from terminating the lease. Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions. In determining whether the trial court's findings of fact are supported by the evidence, it is not the function of the appellate court to weigh conflicting evidence, pass upon the credibility of the witnesses, or redetermine the questions of fact. The trial court's findings were supported by substantial competent evidence.

Lessees contend statutory damages and attorney fees (K.S.A. 55-202) should not have been awarded by the trial court.

The lease provided for a term of one year. Contained in the lease were three conditions which, if any one of the conditions was performed by the lessees, would extend this lease beyond the one-year term. The three conditions were: (1) production of oil and gas; (2) development of the lease; and (3) operation of the lease.

The trial court determined that the lessees had failed to produce oil and gas in paying quantities. The court further found the lessees had failed to use reasonable diligence expected of an operator of ordinary prudence in developing or operating the lease, thereby violating the lease's expressed covenants. The court, because of lessees' failure, extinguished the life of the lease and declared the lease forfeited.

Lessors gave notice to the lessees, as required by K.S.A.

55-201, of their failure to comply with the expressed covenants of the lease, causing a forfeiture and voiding the lease. The lessees denied they had failed to comply with the terms of the lease and that their performance of those terms had extended the lease beyond the one year primary term. The issues were raised and the lessors filed this action to declare the lease agreement forfeited and void.

Lessors prevailed in their action. The lessors obtained the release from the court which declared the lease had been forfeited by lessees' failure to comply with the terms of the lease. K.S.A. 55-202 allows the trial court to award a successful lessor the sum of $100.00 as damages, and all costs, together with reasonable attorney fees for preparing and prosecuting the suit, plus additional damages when the evidence in the case warrants. In addition to the forfeiture of the lease, the trial judge awarded $100.00 as damages, the cost deposit of $35.00, deposition expenses of $171.00, publication expenses of $106.08, and attorney fees in the amount of $4,000.00.

The awarding of damages, costs, attorney fees and additional damages under K.S.A. 55-202 is discretionary with the trial court. Where the lessee claims the trial court has abused its discretion by such award, the burden of proving the abuse is upon the lessee. Here the judicial discretion was exercised within the bounds of reason and justice. The award by the trial court was not an abuse of discretion.

Judgment is affirmed.