(309 P.3d 1)
No. 108,488

WANDA SIEKER, *Appellee*, v. FAYE M. STEPHENS TRUST, *et al.*,
*Appellants*.

Opinion filed July 19, 2013.

*Timothy R. Keenan* and *Addie L. Baird*, of Keenan Law Firm, P.A., of Great Bend, for appellant.

*Robert E. Bauer* and *Greg L. Bauer*, of Law Office of Bauer & Pike, LLC, of Great Bend, for appellee.

Before BUSER, P.J., McANANY and POWELL, JJ.

McANANY, J.: The Faye M. Stephens Trust appeals the termination of its oil and gas lease covering 150 acres owned by Wanda Sieker for failure to develop the lease. One hundred and sixty acres was originally leased by Sieker's predecessor, Emma Vogelsang, in 1950. A producing well was drilled in 1951 and occupied 10 acres of the tract. The remaining 150 acres remained undeveloped.

*The Facts*

The parties are well acquainted with the facts, which are set forth in the district court's well drafted and comprehensive memorandum decision. For our purposes, the following brief summary will suffice.

The Faye M. Stephens Trust became the majority working interest owner in 2009. At that time, Sieker, either individually or acting through her son, Kenny, advised the Trust that she wanted it to release the undeveloped portion of the lease. This was followed by written demands in July and October 2009.

The Trust determined that further development would require 3D seismic testing on the lease. 3D seismic testing has been employed on about 90% of the wells currently drilled in Kansas. Because seismic testing could not be performed successfully without including testing of adjoining tracts, and because Credo Petroleum, the lessee on adjoining tracts, would not agree to participate, the Trust decided that further development of the lease was not possible at the time.

In February 2010, Sieker sued the Trust to cancel the lease on the undeveloped 150 acres. Sieker claimed the Trust breached the

implied covenant to develop the lease as a reasonably prudent operator should. Following a bench trial, the district court cancelled the lease on the 150 acres, leaving the lease in place for the 10 acres where production was ongoing. On considering the Trust's motion to alter or amend the judgment, the court determined that the proper relief was to immediately cancel the lease on the undeveloped 150 acres and not to grant a conditional decree of cancellation to be effective if the Trust failed to exercise reasonable efforts to explore and develop the 150 acres within a reasonable time.

*Implied Covenant of Reasonable Exploration and Development*

In this appeal, the Trust argues that the district court erred when it found that it breached the implied covenant for reasonable exploration and development. To the contrary, the Trust contends it was willing to participate in a 3D seismic study but Credo Petroleum, probably in cahoots with Sieker, blocked its efforts to do so.

On appeal, we review the trial court's findings of fact to determine if they are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. *Hodges v. Johnson,* 288 Kan. 56, 65, 199 P.3d 1251 (2009). In doing so, we do not reweigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. *In re Adoption of Baby Girl P.,* 291 Kan. 424, 430-31, 242 P.3d 1168 (2010). We have unlimited review over the district court's conclusions of law. *American Special Risk Management Corp. v. Cahow,* 286 Kan. 1134, 1141, 192 P.3d 614 (2008).

Every oil and gas lease in Kansas contains by implication a covenant to develop the leased property. *Berry v. Wondra,* 173 Kan. 273, 281, 246 P.2d 282 (1952); *Greenwood v. Texas-Interstate P. L. Co.,* 143 Kan. 686, Syl. ¶ 1, 56 P.2d 431 (1936); *Alford v. Dennis,* 102 Kan. 403, Syl. ¶ 3, 170 Pac. 1005 (1918). The Kansas Deep Horizons Act, K.S.A. 55-223 *et seq.,* codified this common-law principle. The Act implies in all oil and gas leases a covenant "to reasonably explore and to develop the minerals which are the subject of such lease." K.S.A. 55-223.

An owner whose lands are burdened with an oil and gas lease is entitled to have those lands prospected for oil and gas within a reasonable period of time. 102 Kan. at 404. A lessee is required to act as a reasonably prudent operator in developing the leased property. *Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 732, 864 P.2d 204 (1993); *Sanders v. Birmingham*, 214 Kan. 769, 776, 522 P.2d 959 (1974).

"Whether a lessee has performed his duties under the expressed or implied covenants is a question of fact. In the absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent, or the diligence with which, the operations and development shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence would do under the same or similar circumstances, having due regard to the interest of both." *Adolph v. Stearns*, 235 Kan. 622, Syl. ¶ 1, 684 P.2d 372 (1984).

The *Adolph* court advanced the general principle that

"[t]his court, when speaking of these covenants, places great emphasis on the individual property rights and construes oil and gas leases to promote development and prevent delay upon the theory that the lessor has a right to have his land developed as rapidly as possible. To insure that end when a lease itself does not contain specific expressions regarding production or development, the law determines the intention of the parties and the court has imposed such duties upon the lessees. The legislature as a matter of public policy has by statute included the implied covenant to explore and develop all oil and gas leases when such covenants are not contained in the lease K.S.A. 55-223." 235 Kan. at 626.

In determining whether an operator has exercised reasonable diligence in its efforts to develop the land, the court must consider a variety of circumstances such as

" 'the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefor or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir— whether such as to permit the drainage of a large area by each well—and the usages of the business.' [Citation omitted.]" *Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 374, 133 P.2d 95 (1943).

Here, the district court based its decision in part on the fact that lessees on nearby properties had successfully undertaken efforts to drill additional wells and to pursue further development. In addition, oil prices and demand had increased, and Sieker was ap-

proached by a prospective lessee who was able to conduct the 3D seismic study. Thus, termination of the lease would probably result in further development for the landowner.

In *Berry*, our Supreme Court found that an inability to further develop the land does not excuse the lessee from the duty to develop and explore. 173 Kan. 273, Syl. ¶ 2. There, the lessee faced financial constraints preventing him from further development. Here, the Trust has the financial ability to drill additional wells, but it is unable to participate in 3D seismic studies that would provide it with the knowledge of whether and where to drill. But Credo Petroleum apparently does have the ability, so the district court found forfeiture to be appropriate because Sieker then would have an opportunity for further development of this 60-year-old lease.

In *Sauder v. Mid-Continent Corp.*, 292 U.S. 272, 277, 54 S. Ct. 671, 78 L. Ed. 2d 1255 (1934), the district judge cancelled a lease, noting that the lessor in that case "had no present intention of further exploring and developing, unless and until developments in the immediate vicinity should convince them that it would pay to take such action." The *Sauder* Court framed the issue as follows:

"The matter in dispute is the respondent's alleged failure to comply with its obligations. The petitioners say that, if the lessee with good reason believes there is no mineral to be obtained by further drilling it should give up the lease; the respondent insists that as there is only a possibility of finding mineral, no prudent operator would presently develop, but the mere possibility entitles it to hold the lease, because it is producing oil from a portion of the area." 292 U.S. at 279.

The *Sauder* Court rejected the lessee's intention to hold onto the lease based on the mere possibility of further development. 292 U.S. at 279-82.

Here, substantial evidence supports the district court's finding of breach of the implied covenant for reasonable and further development. Experts for both parties testified that a 3D seismic study should be conducted in order to determine whether further drilling would be fruitful. The district court noted that the property had been burdened with an oil and gas lease since 1951 with production occurring on only 10 acres. The parties stipulated that the next step that a reasonably prudent operator would take in satis-

fying its requirements would be to further develop and explore the lease through a 3D seismic study. Although the ability to further develop the lease may now be out of the Trust's hands due to the fact that it cannot find other parties willing to join it in a 3D seismic study, the Trust cannot continue to hold the lease on the 150 acres indefinitely in the hopes that someday there will be a 3D seismic study in which it can participate.

The district court found: "The defendants did nothing and basically sat on their rights and did not go forward with additional development. The evidence showed there has been 3D seismic done throughout land all around and surrounding this particular lease over the years." As this further development occurred in the surrounding areas, Stephens did not participate.

The Trust argues that Credo Petroleum has singlehandedly blocked its attempts to further develop the land by blocking its participation in the 3D seismic study. However, this assertion ignores the history of the case. At the time the lawsuit was filed, no additional exploration or production had been undertaken for nearly 60 years.

We are unable to review the exhibits that were relied on by the district court in making its ruling because they were not included in the record on appeal. As the appellant, the Trust has the burden of showing error by the trial court. Based on our review of the limited record, it is clear that the Trust has failed to demonstrate that the district court's ruling was not supported by substantial evidence.

## The Remedy

The Trust argues that the district court erred in imposing an unfair remedy. It asks that we direct the district court to enter a decree cancelling the lease in the future if it fails to further develop the lease within a reasonable time.

But Sieker sought cancellation of the lease, not an order compelling the Trust to develop the lease. K.S.A. 55-226 provides remedies for breach of an implied covenant to further explore or develop a lease. It states:

"If the court determines that the lessee has failed to comply with [the implied covenant to explore and develop], the court may grant the lessee a reasonable time in which to comply, or the court may issue an order terminating the lessee's right to such subsurface part or parts as are the subject of such action. The court may enter such other orders as the interests of the parties and equity may require." K.S.A. 55-226.

Here, the district court concluded that Sieker had no adequate remedy at law and was entitled to a cancellation of the lease covering the nonproducing 150 acres.

As recently noted by this court in *Lewis v. Kansas Production Co.*, 40 Kan. App. 2d 1123, 1127, 199 P.3d 180 (2009):

"Historically, cancelling an oil and gas lease was an extreme remedy. Because cancelling a lease works [as] a forfeiture, courts have usually required a landowner to demand compliance with the implied covenant to explore and develop before granting the landowner's request to cancel an oil and gas lease."

In *Lewis*, a panel of this court noted that K.S.A. 55-229 explicitly provided that the remedies provided in K.S.A. 55-226 are "merely a codification of the preexisting common-law requirements." 40 Kan. App. 2d at 1128. See *Amoco Production Co. v. Douglas Energy Co. Inc.*, 613 F. Supp. 730 (D. Kan. 1985) (K.S.A. 55-229 preserves the common-law remedies in their original form). Thus, we turn to the available common-law remedies.

"Forfeitures are not favored. [Citation omitted.]" *Greenwood*, 143 Kan. at 694. See *Robbins v. Chevron U.S.A., Inc.*, 246 Kan. 125, 134, 785 P.2d 1010 (1990) (forfeiture of oil and gas leases as a remedy for breach of an implied covenant is generally disfavored). But cancellation of the lease after a breach of the implied covenant to further develop and explore is an appropriate remedy in order to prevent injustice. *Thurner v. Kaufman*, 237 Kan. 184, 189, 699 P.2d 435 (1984).

The Trust claims that a demand must be made upon the lessee to further develop the real property before seeking the remedy of cancellation. See *Storm v. Barbara Oil Co.*, 177 Kan. 589, 599, 282 P.2d 417 (1955). As the court stated in *Greenwood*, 143 Kan. at 694:

"While it has been held that, under certain conditions, notice to explore is not a condition precedent to bringing an action for forfeiture, yet the fact a suit is

brought without any demand having been made by the landowner upon the lessee that further development be made, has some bearing on the question of whether the conduct of the lessee is such that the landowner is entitled to the rather harsh remedy of forfeiture."

Here, Sieker contacted the Trust by phone and sent two demand letters. The content of the letters is in dispute. It is unclear whether Sieker ever made a request for further development or merely demanded termination of the lease. However, the Trust has not provided the letters in the record on appeal, and the district court found that the Trust had notice that Sieker was seeking further development and exploration of the 160-acre tract of land. Thus, the Trust fails to show that the district court erred in making this finding.

In *Alford*, the defendant was the lessee of two separate tracts of land under the same contract. One tract contained 716 acres upon which the lessee had drilled 25 oil wells, gas wells, and dry holes. But no exploration or development had been undertaken on the other 220-acre tract. The lessor brought an action to have the lease on the 220-acre tract cancelled for breach of the covenant to further develop and explore. Our Supreme Court held that if the lessor's tract was not to be developed, then it was of no use or value to the lessee; and if the lessee had no real intention to develop the tract, then the lease had no purpose and cancelling it would do them no injury. 102 Kan. at 406. "While equity abhors forfeitures it likewise abhors injustice." 102 Kan. at 406.

In considering whether to cancel a lease, the courts may consider whether the lessor received offers from other producers to develop the land. *Berry*, 173 Kan. at 283. As in *Berry*, Sieker has come forward with evidence that another party is ready and willing to further develop and explore the tract of land. The Trust is not in a position to conduct a 3D seismic study and proceed with further development. However, Sieker has found a party who is willing to do so.

The Trust claims the district court should have imposed a conditional cancellation rather than a forfeiture. See *Rook v. James E. Russell Petroleum, Inc.*, 235 Kan. 6, 17-18, 679 P.2d 158 (1984).

In *Lewis*, a panel of this court reversed the district court's cancellation of an oil and gas lease and remanded for further proceedings. 40 Kan. App. 2d at 1134. As in this case, the district court stated that forfeiture was the appropriate remedy because it appeared futile to give the lessee more time to comply. But an important distinction is that the court found in *Lewis* that no demand for compliance had been made prior to filing suit. The court stated that the language of the letter that the lessor gave to the lessee gave "no reason to believe that [the plaintiffs] would accept efforts to negotiate immediate development. This is probably the reason why the trial court concluded that no demand for compliance was given in this case." 40 Kan. App. 2d at 1133.

Here, the district court found that Sieker communicated his desire that the land be further developed. We do not have the benefit of the precise language of the letters sent to the Trust, but its attempt to contact other parties about the possibility of joining a 3D seismic study shows that it understood the letter to be a request for further development.

In *Vonfeldt v. Hanes*, 196 Kan. 719, 414 P.2d 7 (1966), the lessor brought an action to cancel a lease for violation of the implied covenant to reasonably develop the lease. The lessee stated that he had no present plans for drilling, and he would only consider drilling on the land in relation to a secondary recovery operation. The lessee complained that the lessor would not join him in the secondary recovery operation. The district court found it "somewhat incongruous" for the lessee to insist that the lessor and he should go into business together. 196 Kan. at 723. The court upheld cancellation of the lease.

Sieker argues the facts in *Vonfeldt* are substantially similar to the present case. In both cases, the lessee refused to further develop and explore the land without joining another party in its endeavor. The Trust complains that Credo Petroleum is blocking its efforts to further develop the lease, but the Trust does not assert that Credo Petroleum owes it any kind of duty or obligation to join in a 3D seismic study.

The district court noted that additional time for the Trust to further develop the lease would be futile. There is no point in

allowing it to continue holding the lease to the entire 160-acre tract with no plans for further development or exploration in the foreseeable future. Under the unique facts of this case, a conditional cancellation would not be a practical or adequate remedy. The district court had the authority to impose the remedy of lease cancellation, or forfeiture, under K.S.A. 55-226, and it did not err in doing so.

Affirmed.