(339 P.3d 392)
No. 110,599 [1]

MICHAEL E. NOVY and JANET L. NOVY, *Appellants*, v. WOOLSEY ENERGY CORPORATION, *et al.*, *Appellee*.

—

716

Opinion filed June 27, 2014.

*Robert R. Eisenhauer* and *Daniel O. Lynch*, of Johnston Eisenhauer & Eisenhauer, LLC, of Pratt, for appellants.

*Steven D. Gough* and *Joseph A. Schremmer*, of Withers, Gough, Pike, Pfaff & Peterson, LLC, of Wichita, for appellee.

Before ARNOLD-BURGER, P.J., BUSER and SCHROEDER, JJ.

ARNOLD-BURGER, J.: Michael and Janet Novy (the Novys) own land subject to an oil and gas lease held by Woolsey Energy Corporation (Woolsey). Woolsey has refused to drill for either oil or gas on their land for over 30 years because Woolsey has determined, based on its own engineering study, that any well would not produce oil or gas in commercial quantities and the cost would significantly exceed any benefit. The Novys argue that Woolsey has breached its implied duty to develop the land and, accordingly, the lease as to the right to drill for oil should be terminated. The district court granted judgment as a matter of law for Woolsey, finding that the Novys failed to present substantial evidence to show that Woolsey breached the implied covenant to prudently develop. Because we agree, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

The Novys are the owners of a tract of land in Kingman County, Kansas. The land is subject to an oil and gas lease held by Woolsey. The oil and gas lease provides that the lease will remain in effect for 3 years "and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of the products covered by this lease is or can be produced." The lease also allows for unitization with other lands for gas production and states, in pertinent part:

"Any well drilled on such unit shall be for all purposes a well under this lease and shall satisfy the rental provision of this lease as to all of the land covered thereby; Provided, however, lessee shall be under no obligation, express or implied, to drill more than one gas well on said Unit."

The Novys' land was unitized in 1977 for the production of gas with another neighboring 160-acre tract of land, which has a producing gas and oil well located on it.

The Novys filed a petition alleging that Woolsey breached the implied duty to further develop their land because Woolsey failed to drill for oil or gas on the Novys' land for over 30 years and refused to drill a well upon the Novys' request. Because of this failure, the Novys asked the district court to cancel the lease as to the right to drill for oil.

A bench trial was held where the Novys' only evidence submitted was through Michael Novy's testimony and three exhibits outlining the correspondence between the Novys and Woolsey regarding cancellation of the lease. After the Novys rested their case, the district court found as a matter of law in favor of Woolsey because the Novys failed to present sufficient evidence to show that Woolsey breached the implied duty to prudently develop the Novys' land.

The Novys filed a timely notice of appeal.

## ANALYSIS

### Standard of Review

A district court's decision on a motion for judgment as a matter of law under K.S.A. 2013 Supp. 60-250 is reviewed under the former directed verdict standard of review. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 267, 225 P.3d 707 (2010). When ruling on a motion for judgment as a matter of law, the district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. *City of Neodesha v. BP Corporation*, 295 Kan. 298, 319, 287 P.3d 214 (2012).

### The presumption, established under K.S.A. 55-224, does not apply in this case.

The Novys' first argument asserts that under the Kansas Deep Horizons Act, K.S.A. 55-223 *et seq.*—specifically under K.S.A. 55-224—it is presumed that Woolsey breached the implied covenant to prudently develop because the leased land was held by production and a new well had not been drilled for over 15 years. Because

of this presumption, Woolsey was the party with the burden to prove that the lease had not been breached for failure to prudently develop.

Woolsey argues that the Novys have presented this argument for the first time on appeal; that they acquiesced in the allocation of the burden of proof by failing to argue or object to the district court's determination that the Novys maintained the burden of proof; and that such an acquiescence equates to invited error, if there was an error.

Normally, when a lessor files suit requesting the cancellation of an oil and gas lease because the lessee breached the implied covenant to prudently develop minerals, it is the lessor's burden to prove that the lessee failed to reasonably explore and develop the minerals under the leased land. However, if the lessor can produce competent evidence that (1) at the time the lessor filed suit there is no mineral production from a subsurface part or parts of the land covered by the oil and gas lease and (2) initial mineral production on the lease commenced at least 15 years before the suit was filed, then a presumption arises that the lessee has breached the covenant to further explore and develop the lease as it relates to the subsurface part or parts of the land covered by the lease under K.S.A. 55-224.

In Woolsey's trial memorandum, it stated that the Novys carried the burden to prove that Woolsey breached the implied covenant to prudently develop the leased land. The Novys failed to dispute this assertion.

At the bench trial, in Woosley's opening statement and in the oral motion for judgment as a matter of law, Woolsey again stated that the Novys carried the burden to prove that Woolsey breached the implied covenant to prudently develop the leased land. The district court even questioned what the burden of proof meant, and the Novys again failed to assert that the burden of proof was on Woolsey.

Moreover, at the bench trial, as is normal for the party with the burden of proof, the Novys presented their evidence first, without any objection. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013). Finally, a pro-

posed journal entry of judgment was filed, stating that the Novys carried the burden of proof, to which the Novys made no objection.

" 'In the trial of a civil action, when there is a question upon which party the burden of proof rests, a party who assumes the burden of proof, without objections, and makes no contention in the trial court that the court erred in placing the burden of proof on him, is not in a position to raise that question for the first time in this court.' [Citation omitted.]" 297 Kan. at 1204.

Woolsey is correct. The Novys accepted the burden of proof before the district court without question or argument. At no point in the proceedings did the Novys suggest that the presumption under K.S.A. 55-224 had taken effect, and at every stage—through their silence regarding the burden of proof—they led the district court and Woolsey to believe that they carried the burden of proof. The Novys' assertion, that Woolsey should carry the burden of proof, has been presented for the first time on appeal, which under *Thoroughbred Assocs.* is not allowed. Therefore, it was not error for the district court to place the burden of proof upon the Novys to show that the oil and gas lease was breached for Woolsey's failure to prudently develop the leased land.

*The Novys failed to present substantial evidence that Woolsey breached the implied covenant to prudently develop the leased land.*

The Novys present several facts to argue that the leased land was not prudently developed for oil production. The Novys' facts are as follows: (1) There is no producing oil well on their property; (2) there was only one oil well drilled on the Novys' property, which was deemed a dry hole and was abandoned and plugged the same year, in 1982, and no other oil well has been drilled since that time; and (3) oil is being produced from the land adjacent to the Novys' property, but the Novys do not receive any royalties from the oil produced by this well because their land is only unitized with the adjacent property as a gas unit.

It is well-established law in Kansas that every oil and gas lease, unless expressly excluded, contains an implied covenant to prudently develop the leased land. This implied covenant places a duty upon a lessee, when oil in paying quantities has been discovered,

"to continue development of the property and to put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both the lessor and the lessee." *Stamper v. Jones*, 188 Kan. 626, 631, 364 P.2d 972 (1961); see also *Rush v. King Oil Co.*, 220 Kan. 616, 618-19, 556 P.2d 431 (1976) (reiterating the implied covenant to prudently develop); *Sanders v. Birmingham*, 214 Kan. 769, 775-76, 522 P.2d 959 (1974) (reiterating the implied covenant to prudently develop); *Vonfeldt v. Hanes*, 196 Kan. 719, 722, 414 P.2d 7 (1966) (reiterating the implied covenant to prudently develop); *Temple v. Continental Oil Co.*, 182 Kan. 213, 220, 320 P.2d 1039 (reiterating the implied covenant to prudently develop), *reh. denied* 183 Kan. 471 (1958).

It is a question of fact whether a lessee has undertaken the duties imposed by the implied covenant to prudently develop. *Rush*, 220 Kan. at 619. The burden of proof rests on the lessor to show, by substantial evidence, that an implied covenant has been breached. *Sanders*, 214 Kan. at 776-77. Substantial competent evidence is that which is both relevant and substantial and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. In other words, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Venters v. Sellers*, 293 Kan. 87, 93, 261 P.3d 538 (2011).

"The extent of the duties required of a lessee is measured by what is referred to as 'the prudent operator test'. Under the prudent operator test the lessee must continue reasonable development of the leased premises to secure the oil for the common advantage of both lessor and lessee and may be expected and required to do that which an operator of ordinary prudence would do to develop and protect the interests of the parties. [Citation omitted.] The large expense incident to exploration and development, combined with the additional fact the lessee must bear the loss of unsuccessful exploration and development, justifies the lessee in exercising caution with regard to his own economic interests, as well as the interests of the lessor. A lessee is under no duty to undertake development which is unprofitable to him just because it might result in some profit to the lessor. [Citation omitted.]" *Rush*, 220 Kan. at 619.

The following are several factors used by the courts when considering the application of the prudent operator test for the can-

cellation of an oil and gas lease for breach of the implied covenant to prudently develop:

- The quantity of oil and gas capable of being produced from the premises as indicated by prior exploration and development;
- the local market and demand therefor;
- the extent and results of the operations, if any, on adjacent lands;
- the character of the natural reservoir—whether it is such as to permit the drainage of a large area by each well;
- the usages of the business;
- the cost of drilling, equipment, and operation of wells;
- the cost of transportation, the cost of storage, and the prevailing price; and
- the general market conditions as influenced by supply and demand or by regulation of production through governmental agencies. *Sanders*, 214 Kan. at 776.

The only evidence of any of these factors presented by the Novys—through Michael Novy's testimony—is that the price of oil and gas has increased since the lease took effect; that there were three wells drilled about 2 miles south of the leased land; that completion techniques have changed and there are better hydraulic fracturing procedures since the lease took effect; and that Michael Novy's company "would look very strongly" at developing the leased land if the district court cancelled the lease.

The Novys failed to provide evidence of the following factors: (1) that there is the capability of producing oil or gas in paying quantities under the leased land; (2) whether there is a local market and demand for the oil or gas; (3) the extent and results of operations on adjacent lands (despite Novy's testimony that three wells had been drilled about 2 miles south of the leased land, he failed to indicate whether those wells were even producing any oil or gas in paying quantities); (4) the character of the natural reservoir; (5) the cost of drilling, equipment, and operation of any wells drilled; and (6) the cost of transportation and storage. The Novys failed to present substantial evidence that Woolsey breached the implied

covenant to prudently develop the land; thus, the district court did not err when it granted Woolsey's motion for judgment as a matter of law.

*The lease should not be cancelled simply because Woolsey has indicated that any oil wells drilled on the Novys' land would not be commercially feasible.*

In response to two letters from the Novys requesting further development or they would seek to cancel the lease, Woolsey replied that "any oil well drilled on [the Novys'] land will not be commercial." The Novys believe this shows that the lease has no purpose as to oil production; thus, this lack of purpose should lead to the cancellation of the lease as to oil rights. The Novys heavily rely on *Sieker v. Faye M. Stephens Trust*, 49 Kan. App. 2d 183, 309 P.3d 1 (2013), for their argument.

*Sieker* does state the following:

"[I]f the lessee with good reason believes there is no mineral to be obtained by further drilling, it should give up the lease. The lessee cannot hold onto the lease based on the mere possibility of further development. If the lessor's tract is not to be developed, then it is of no use or value to the lessee; and if the lessee has no real intention to develop the tract, then the lease has no purpose, and cancelling it would do the lessee no harm." 49 Kan. App. 2d 183, Syl. ¶ 6.

However, even in *Sieker*, the lessor was able to establish by substantial evidence that the lessee breached the implied covenant to prudently develop by showing that other properties had producing wells, oil prices and demand had increased, and the lessor was approached by a prospective lessee who was willing to further explore the land. See 49 Kan. App. 2d at 187-88.

The Novys also rely on *McCarney v. Freel*, 121 Kan. 189, 190, 246 P. 500 (1926), which stated:

"If the undeveloped portion of the land will not produce mineral in paying quantities, and the lessee would not be justified in drilling more wells, he may not continue to hold by virtue of a provision in the lease extending the term so long as oil or gas may be produced in paying quantities."

But, like *Sieker*, the lessor in *McCarney* was able to show that there were a number of producing wells on other properties surrounding the lessor's property suggesting that a well would be ca-

pable of producing in payable quantities and the lessee still continued to refuse to drill.

As Woolsey points out, this case is similar to *Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 133 P.2d 95, *aff'd* 156 Kan. 722, 137 P.2d 139 (1943). In *Fischer*, the evidence indicated that no drilling activity had occurred on the leased land for over 2 years and that the lessee refused, by letter to the lessor, to drill at that time, believing that drilling a new well would not be justified. However, the Kansas Supreme Court found:

"The mere fact that no well had been drilled on plaintiff's land—more than a half mile from production—for two and a half years is no proof that an operator of reasonable prudence, with regard for the interests of both lessor and lessee, would have drilled, under the existing facts and circumstances. Nor can we interpret appellant's letter as an abandonment of the lease. Appellant simply stated that it did not consider further development *'at this time'* to be justified under the geological and production circumstances then existing. If such a decision on the part of a lessee—unquestioned by any evidence on the part of the lessor—were to be held tantamount to abandonment, the requirement that the plaintiff sustain the burden of proof as to prudent development would cease to have meaning." 156 Kan. at 375-76.

The *Fischer* case goes on to state that in certain circumstances, where a lessee has refused to drill, "the lessee *'may* be required' to surrender, *provided always that there is substantial evidence to show lack of prudent development*. It by no means follows that he may be required to surrender, in the absence of any testimony whatever that any ordinarily prudent operator would proceed differently." 156 Kan. at 377.

Based on the above cases, the lessor must show more than just the fact that the lessee has refused to drill additional wells in order sustain the burden of proof that the lessee breached the implied covenant to prudently develop. Merely because Woolsey indicated by letter that it would not be commercially feasible to drill additional oil wells on the leased land does not automatically require the cancellation of the lease as to oil. The Novys must still show, by substantial evidence, that Woolsey breached the implied covenant to prudently develop the leased land. Because they have failed

to do so, we affirm the decision of the district court granting judgment as a matter of law to Woolsey.

Affirmed.