No. 40,573

W. F. TEMPLE, LUCY TEMPLE, MELVIN TEMPLE, J. L. TEMPLE, MAY LIVINGSTON, KATHRYN L. EMLER, CARRIE MOWREY, GEORGIA G. PATEE, HAROLD GIBSON and SOUTHLAND ROYALTY Co. (Plaintiffs), *Appellees,* v. CONTINENTAL OIL COMPANY, a Corporation, CITIES SERVICE OIL COMPANY, a Corporation, and SHELL OIL COMPANY, a Corporation (Defendants), *Appellants,* and ARGO OIL CORPORATION (Defendant), *Appellee.*

(328 P. 2d 858)

Opinion denying a rehearing filed July 16, 1958.

*Fred L. Conner, T. B. Kelley* and *Glenn Opie,* all of Great Bend, *Richard R. Linn,* of Oklahoma City, Oklahoma, *R. O. Mason,* of Bartlesville, Oklahoma, *Jesse M. Davis* and *Gordon Watts,* both of Tulsa, Oklahoma, for the appellants.

*Harold Gibson,* of Lyons, for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: After denying appellants original motion for rehearing on March 12, 1958, this court later granted appellants leave to file a second motion for rehearing. Briefs have been filed by counsel for the appellants and also by *amici curiae* on this second motion. Finding nothing which warrants a reconsideration of the case the second motion for rehearing is denied.

It is contended the opinion in effect holds that a breach of the implied covenant to fully develop an oil and gas lease will be presumed as a matter of law where the lessee fails to recover all of the recoverable oil within a period of twenty years (1) even though the lease specifies that its term shall be for a primary term of years and as long thereafter as oil or gas, or either of them, is produced from said land by lessee and (2) even though defined legislative policy is contrary to such holding.

Counsel are apprehensive concerning one paragraph of the opinion (*Temple v. Continental Oil Co.,* 182 Kan. 213, 320 P. 2d 1039) which reads:

"We assign another reason why, in our opinion, the judgment of the trial court is correct. And this reason overrides the assignment of errors specified by the defendants which we have not labored in detail. Upon the whole record presented, taking into consideration all the facts and circumstances,

upon which there can be no error predicated, particularly the holding of the lease on the quarter section in controversy for more than 28 years, with production for more than 20 years from the lease totaling to date approximately one million barrels of oil produced, where admittedly the 160-acre lease initially had 112 oil producing surface acres from the Arbuckle Limestone Formation, under circumstances where the present royalty owners are one generation removed from the original lessors, and confronted with the proposition stated by defendants' own expert witness that *eventually* all the recoverable oil from the ten-acre tract in question will be produced by an existing well on the Gibson lease, we are of the opinion that the defendants have not fully developed and produced the lease with reasonable diligence and along such lines as are reasonably calculated to make extraction of oil from the leased lands of mutual advantage and profit to the plaintiffs (successors to the original lessors) and the defendants (successors to the original lessee), and by reason thereof the implied covenants in the lease to develop have been breached. A lessor is entitled to the benefit of oil produced from the lease at the time it should be produced and not at some remote period of time in the future. The lessee is not the sole judge of what constitutes prudent development of the tract. The test is what would be expected of an operator of ordinary prudence, in the furtherance of the interests of both *the lessor* and the lessee." (p. 235.)

Counsel then *isolate* the following language from the paragraph:

" '. . . particularly the holding of the lease on the quarter section in controversy for more than 28 years with production for more than 20 years from the lease . . . under circumstances where the present royalty owners are one generation removed from the original lessors. . . . A lessor is entitled to the benefit of oil produced from the lease *at the time it should be produced and not at some remote period of* time in the future.' (Emphasis added.)"

This language has thus been taken out of context. The entire paragraph must be read in connection with the paragraph which follows it and the entire opinion. As a preface in the quoted paragraph it was specifically stated that the additional reason given was *based upon the whole record presented, taking into consideration all the facts and circumstances.* No effort will be made to detail all these facts and circumstances upon which no error could be predicated since they are fully disclosed in the opinion. One of the *basic facts* established by the stipulations was that *Section 24 had an area of 40 acres in the center upon which no drilling was ever attempted by the appellants,* and that it initially represented an area with oil bearing Arbuckle Limestone Formation of considerable thickness. (While appellants own all the leases on Section 24, it was with some hesitancy that too much emphasis be placed upon this fact because only 10 acres of this 40-acre void in development

are involved in the present litigation. The reasons why this large area is undeveloped are not disclosed by the record.) The fact was definitely established that development of the quarter section in controversy was undertaken on a 10-acre well spacing pattern. Original development of the leases on Section 24 disclosed 10-acre locations upon which no drilling was undertaken, but later there was infill drilling on many of these 10-acre locations from 1951 to 1954, none, however, on the 40 acres in the center of the section.

The facts and circumstances to which reference was made further disclosed that appellees had produced substantial evidence to prove that the implied covenant to develop had been breached, thus making out a *prima facie* case in compliance with the burden cast upon appellees. Appellants undertook to prove in defense that oil from the 10-acre tract in question would be produced through wells on the Gibson lease to the extent that it was economically recoverable—that there was an effective water drive across the undeveloped portions of the lease. Proof by appellants disclosed that *eventually* all the recoverable oil from the 10-acre tract in question would be produced by existing wells on the Gibson lease.

It is at this point that the *time* element must be reconciled with the established Prudent Operator Rule. It is well settled that where the existence of oil in paying quantities is made apparent, it is the duty of the lessee to continue the development of the property and to put down as many wells as may be reasonably necessary to deplete the oil and gas reserves underlying the premises for the common advantage of both the lessor and the lessee. Obviously, fulfillment of this obligation might require the drilling of several wells, despite the fact that one well alone *might ultimately* drain the entire reservoir *given unlimited time*. In other words, lessees cannot prove compliance with the Prudent Operator Rule by showing they have drilled enough wells to "adequately" drain the recoverable oil from the leased premises "*eventually*." Here the requirement to "adequately drain" is conditioned *by appellants* on the *time element*—given *sufficient time* the wells will eventually drain the recoverable oil adequately. Such ambiguity in defense, once the lessors have sustained their burden of proof in accordance with the established law, is equivalent to no defense. Appellants, having thrust the time element into a defense under the Prudent Operator Rule, cannot now be heard to say this court is making a departure from the Rule by inserting a time element into the implied

covenant to develop an oil and gas lease. The term "Prudent," with reference to an *Operator* of an oil and gas lease, is sufficiently broad to ensnare any ingenious device or scheme conceived to circumvent the plain meaning of the Prudent Operator Rule.

By resorting briefly to figures geometrically it is apparent that a well located on the center of a 10-acre tract must drain a radius of 330 feet (exclusive of the corners in a square beyond this radius). But here Gibson No. 5 (the nearest well) would be required to drain oil from a radius of 990 feet (exclusive of the corners beyond this radius) to eventually drain all the recoverable oil from the 10-acre tract in question.

In view of the foregoing discussion and upon *all the facts and circumstances presented by the record* appellants' failure to drill a well on the 10-acre tract in question after an *unreasonable delay in time,* once having initiated a 10-acre well spacing pattern followed by substantial production, was a failure to fully develop and produce the lease with reasonable diligence and along such lines as are reasonably calculated to make extraction of oil from the leased lands of mutual advantage and profit to the lessors and the lessees, and by reason thereof appellants have failed to comply with the implied covenants to develop the lease. A lessor or his successors are entitled to the benefit of oil produced from the lease at the time it should be produced and not at some *remote* period of time in the future. *Time* is thus an *element* in the Prudent Operator Rule which must be considered *in relation* to all of the other factors of a given case in the development of an oil and gas lease.

A recital in the quoted paragraph of the specific facts disclosed by the record relative to this *time delay* was incidental to focusing attention upon the extent of this delay in drilling the location in controversy. By no reasonable interpretation can the opinion be said to state a specific time limitation for the exhaustion of a pool. Many factors make the depletion time of an oil and gas reservoir a matter of great variance. This was recognized by the order of the court in granting appellants four months to commence the drilling of a well. Should oil be found and produced from the 10-acre tract in question by appellants, by drilling prior to cancellation under the order, it may require considerable time before the recoverable oil is produced. Under the terms of the lease appellants would be entitled to produce it within the requirements of state laws and regulations.

A generous supply of proration data is presented in appellants' brief on motion for rehearing. Unfortunately the record itself is barren of any stipulations or evidence by appellants concerning restrictions or regulation by the State Corporation Commission relative to the Geneseo Pool, except insofar as such information may be inferred from the facts disclosed in the opinion. This was appellants' choice in presenting its case to the trial court, not a choice of this court nor a disregard by this court of legislation controlling the production of oil and gas. (In *Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 133 P. 2d 95, the defendants pleaded the oil and gas proration and conservation laws and the limitation of production by reason of regulation. There the parties stipulated the limited extent to which production of the potential capacity of an oil well was permitted.) To the extent that the appellants' record in the trial court, as abstracted, presented stipulations and other evidence which incidentally reflected limitations and requirements of good conservation practice and of compliance with the state laws and the orders and regulations of the State Corporation Commission, this court has given them full consideration and proper weight.

JACKSON, J., not participating.