No. 44,444

PETE G. VONFELDT, *Appellee,* v. CHARLES L. HANES, *Appellant.*

(414 P. 2d 7)

Opinion filed May 7, 1966.

*Jan. G. Banker,* of Russell, argued the cause, and *Harold W. McCombs,* of Russell, was with him on the briefs for appellant.

*Clifford R. Holland, Jr.,* of Russell, argued the cause, and *Marvin E. Thompson, George W. Holland* and *Mark Arthur, Jr.,* of Russell, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action by the landowner to cancel an oil and gas lease for violation of the implied covenant to reasonably develop the lease. Trial was by the court which made findings of fact and conclusions of law and rendered judgment in favor of the plaintiff. A decree was entered cancelling the north 40 acres of the defendant's 80-acre oil and gas lease unless the defendant commenced operation for the drilling of a well upon the 40-acre tract within 60 days from January 25, 1965. In lieu of performance, the defendant gave a supersedeas bond to stay the judgment, and perfected this appeal.

The plaintiff, Pete G. Vonfeldt, is the owner of the northwest quarter of Sec. 6, Township 15 South, Range 14 West, of the 6th principal meridian, Russell County, Kansas. The original oil and gas lease covering the entire quarter section was for a term of 10 years from August 24, 1929, and as long thereafter as oil and gas was produced. A well was drilled on the west 80 acres within the primary term of the lease and there has been continuous pro-

duction somewhere on the lease since that time, but not necessarily from the same well or wells.

In 1949, the defendant, Charles L. Hanes, purchased the oil and gas lease covering the east 80 acres of the quarter section, hereafter referred to as the Hanes lease or the east 80 acres. At that time, three wells had been drilled on the property and were producing oil. Well No. 1 was drilled in the northeast 10-acre location of the south 40 acres and is still producing; well No. 2 was drilled in the northwest 10-acre location of the south 40 acres, and produced oil for a number of years, but was abandoned in 1960. In reworking the well, the pipe collapsed as the result of a Dakota leak, and workmen were never able to get tools back into the well. Well No. 3 was drilled in the northeast location of the north 40 acres, and produced nineteen barrels of oil a day for a few days and then started falling off. Hanes tried to rework the Arbuckle formation and could get nothing but water; he then plugged the Arbuckle and opened up all Lansing-Kansas City zones which had not previously been opened, but he was never able to make well No. 3 produce. Nothing further was done with the well except occasional testing until 1955 when it was plugged.

In 1954 Hanes drilled well No. 4 in the southwest 10-acre location of the south 40 acres. The well was acidized and at first made nine barrels of oil per day but thereafter it dropped down to four barrels per day and has since been producing approximately that amount. Hanes does his own pumping and roustabout work, and at the time of trial, wells Nos. 1 and 4 were the only producing wells on the east 80-acre lease.

During the 24 years oil has been produced from the Hanes lease, total production has amounted to approximately 120,000 barrels of oil. As previously indicated, well No. 3 produced very little and the three remaining wells produced most of the oil, making a well-average of almost 40,000 barrels. If a new well reached the average of 40,000 barrels, it would recover in excess of $112,000 at the current price of crude oil and would be economically feasible. At the present time, the two wells on the Hanes lease produce approximately six barrels of oil per day and make approximately fifteen barrels of water per day. All production is from the Lansing-Kansas City formation.

Approximately ten years prior to this litigation, the plaintiff purchased the oil and gas lease covering the west 80 acres of the

quarter section and he owns and operates that lease. Four wells have been drilled on that lease, but the record is silent as to when they were drilled. The plaintiff testified that since he has owned the lease he has drilled no wells. A well was drilled on the northwest 10-acre location of the north 40 acres, which produced oil for several years, and has since been abandoned. A well was drilled on the northeast 10-acre location and was dry; a well was drilled in the center of the south half of the north 40 acres and was dry; a fourth well was drilled on the southeast 10-acre location of the south 40 acres, and it is still producing oil. The plaintiff testified he would drill a well on the north 40 acres of the Hanes lease but did not specify a particular location.

Plaintiff's Exhibit No. 1, prepared by R. P. Nixon, a petroleum geologist and oil producer who resides in Russell, Kansas, showed the locations of all wells drilled on the Vonfeldt quarter section and all wells drilled on surrounding land, and showed the minus elevation of each well. A minus figure indicates distance in feet below sea level. A low minus figure indicates a high structure, and a high minus figure indicates a low structure. The higher structures or lower minuses are the most likely to produce oil. Nixon testified that he was of the opinion a well drilled on the south half of the north 40 acres of the Hanes lease would encounter the Lansing-Kansas City at a favorable datum and he recommended that a well be drilled at the southwest corner of that 40 acres or a half location north, to a depth sufficient to test the Gorham Sand and Arbuckle, and that if a well were drilled it would recover sufficient oil to be a commercial well.

The district court found that the south 40 acres of the Hanes lease had been adequately developed and that no part of the south 40 acres should be cancelled. However, it found that the north 40 acres of the Hanes lease had not been fully developed and that the entire 40 acres should be cancelled unless the defendant commenced the drilling of a well thereon within 60 days.

The district court's judgment cancelling the north 40 acres of the lease included the northeast 10-acre location of well No. 3 which had been drilled and plugged, and which fully tested all known producing zones.

The defendant first contends the district court erred in ordering cancellation of the north 40 acres of the Hanes lease unless drilling operations were commenced within 60 days. The rules relating to

the cancelling of oil and gas leases for violations of implied covenants have been stated in numerous decisions. Recent cases applying those rules are *Temple v. Continental Oil Co.,* 182 Kan. 213, 320 P. 2d 1039, rehearing denied 183 Kan. 471, 328 P. 2d 358; *Renner v. Monsanto Chemical Co.,* 187 Kan. 158, 354 P. 2d 326, and *Stamper v. Jones,* 188 Kan. 626, 364 P. 2d 972. In the *Renner* case it was said:

"In evolving the doctrine of implied covenants courts have placed great emphasis on individual property rights and construed oil and gas leases 'to promote development and prevent delay' upon the theory that the lessor had the right to have his land developed as rapidly as possible (*Temple v. Continental Oil Co.,* 182 Kan. 213, 320 P. 2d 1039, opinion denying rehearing, 183 Kan. 471, 328 P. 2d 358; 2 Summers, Oil and Gas, § 371, p. 484; Merrill, Covenants Implied in Oil and Gas Leases, 2d ed., §§ 1, 6 and 7, pp. 15, 26 and 27). To that end, where the lease itself does not contain express provisions creating duties in the lessee to drill exploratory wells; to drill additional wells after discovery; to operate with diligence and market the product if oil and gas are discovered in paying quantities, and to protect the premises against drainage by wells on adjoining leases, the law imposes such duties upon the lessee under the doctrine of implied covenants (*Howerton v. Gas Co.,* 81 Kan. 553, 106 P. 47, 34 L. R. A. [N. S.] 34; *Culbertson v. Cement Co.,* supra, Annotated Cases 1914A. 610; *Alford v. Dennis,* 102 Kan. 403, 170 P. 1005; *Webb v. Croft,* supra; *Thiessen v. Weber,* supra; *Christiansen v. Virginia Drilling Co.,* supra; *Berry v. Wondra,* supra; Merrill, *op. cit.,* supra, § 4, p. 23; Summers, *op. cit.,* supra, § 395, p. 526). And, there are many other decisions to the same effect."

It was further said:

"Generally speaking, the rule of the implied covenants to drill additional wells after discovery and to protect the premises against drainage by wells on adjoining leases is this: under the former, when oil in paying quantities becomes apparent and the number of wells to be drilled on the lease is not specified, there is an implied obligation that the lessee continue development of the property and put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both the lessor and the lessee (*Howerton v. Gas Co.,* supra; *Brown v. Oil Co.,* 114 Kan. 166, 217 P. 286; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810; *Fischer v. Magnolia Petroleum Co.,* 156 Kan. 367, 133 P. 2d 95; *Berry v. Wondra,* supra; *Temple v. Continental Oil Co.,* supra). . . . Whether a lessee has performed his duties under the implied covenants is a question of fact. In the absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent to which, or the diligence with which, the operations shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence would do under the same or similar circumstances, having due regard for the interests of both (*Greenwood v. Texas-Interstate P. L. Co.,* 143 Kan. 686, 56 P. 2d 431; *Harris v. Morris Plan Co.,* supra; *Myers v. Shell Petroleum Corp.,* supra; *Fischer v. Magnolia Petroleum Co.,* supra, Syl. ¶ 4; *Temple v. Continental Oil Co.,* supra)." (l. c. 167, 168.)

Does the record contain substantial evidence to support the district court's finding. We think it does. It is unnecessary to summarize in detail the evidence. As previously indicated plaintiff relied upon the testimony of R. P. Nixon, who prepared a contour map based upon known datums as to the top of the Lansing-Kansas City formation. The defendant relied on the testimony of two geologists, Francis Whisler, who prepared a contour map showing the elevations in the area of the Vonfeldt-Hanes leases, and J. R. Green, who did not prepare any map but merely testified as to the work of other persons. It is not disputed that Nixon and Whisler had different interpretations of the geological information available to them. Both were competent geologists and qualified as expert witnesses. Nixon testified that, in his opinion, the north 40 acres of the Hanes lease had not been adequately developed and that if a well were drilled on either the southwest or center location of the north 40 acres, it would encounter the Lansing-Kansas City eight feet higher than the other wells and that this eight feet of reservoir had not been drained which would make it a better well than the present wells. There was evidence which would afford a reasonably accurate basis for such a conclusion.

The defendant testified he had no present plans for drilling, and that he would only consider drilling on the east 80 acres in relation to a secondary recovery operation for both leases. He principally complains that plaintiff had not indicated any desire or inclination to join with him in a secondary recovery operation. He cites no authority that plaintiff is under any obligation or duty to cooperate in such an operation. The closest waterflood project was near the city of Gorham about six miles away. It seems obvious that, in view of the extensive litigation, the district court concluded it was somewhat incongruous for the defendant to insist that the plaintiff and he should go into business together. The plaintiff testified he was a farmer and not a geologist; that he was not familiar with waterflood operations and did not wish to be in business with defendant; that the defendant should drill on the Hanes lease or give it up; that if the north 40 acres were returned to him he would personally drill a well and was financially able to do so.

We think the record discloses substantial testimony which supports the district court's finding that the north 40 acres of the Hanes lease had not been adequately developed. In *Stamper v. Jones,* supra, it was said:

"It is universally recognized that geology is not an exact science. Therefore, in cases of this type courts are concerned with probabilities or reasonable expectations. Thus, when a qualified expert witness expresses an opinion that oil could be produced from the undeveloped portion of a tract in question with reasonable expectations that it would be produced therefrom in paying quantities, it is sufficient evidence upon which to base a finding that the lessee has failed to comply with the obligation imposed by the implied covenant to develop the lease, provided the facts upon which an expert opinion is based afford a reasonably accurate basis for the conclusion reached, as distinguished from mere guess or conjecture." (1. c. 632.)

While the burden of proof was upon the plaintiff to show by substantial evidence the defendant had not acted with reasonable diligence under the facts and circumstances to fully develop the north 40 acres, the district court, as trier of the facts, weighed the testimony of the experts, and our review of the record convinces us there was substantial evidence to support the court's finding ordering the lease cancelled for breach of the implied covenant to fully develop. (*Renner v. Monsanto Chemical Co.*, supra; *Templer v. Continental Oil Co.*, supra.)

The defendant contends the district court erred in ordering cancellation of the 10-acre tract in the northeast corner of the defendant's lease on which well No. 3 was located. The plaintiff asked for cancellation of the lease as to the areas upon which no producing wells were located. The district court found that the south 40 acres of the lease had been adequately developed by drilling, and also found that the north 40 acres had not been adequately developed. Well No. 3 was drilled into the Arbuckle formation in 1948. It first produced approximately nineteen barrels of oil per day for a short time and then fell off. Hanes purchased the lease in 1949 and tried to rework the Arbuckle formation but could get nothing but water. That formation was plugged, and he tested the various Lansing-Kansas City zones but with no success. In 1955 he plugged the well. He testified that he might wish to use the hole for disposal well purposes, however, there was no evidence whether it could be made into a salt water disposal well. In the absence of direct testimony to the contrary, we assume that defendant plugged this well in accordance with the rules of the State Corporation Commission, which would mean that it contained much cement; hence it would seem to be dubious that defendant would be able to use this well for disposal purposes.

Insofar as this particular 10-acre location is concerned, it is merely a part of the north 40 acres of the Hanes lease from which

thus far there has been very little or no commercial production. However, it is possible that all or a portion of this particular tract may be productive. Defendant testified there was some doubt as to the top of the Lansing-Kansas City formation and that it might have been as much as fourteen feet higher than the top of that formation as shown upon the contour map. If cancellation is to be granted to plaintiff it should be on all nonproducing areas on the north 40 acres including the area surrounding well No. 3. Plaintiff desires to drill a well on this acreage and he is entitled to full freedom to choose his first location. We find no error in the district court's judgment cancelling the lease on this 10-acre location.

The burden was upon the defendant to make it affirmatively appear that the district court committed error. We have thoroughly reviewed the record and conclude the defendant has not sustained the burden incumbent upon him.

The judgment of the district court is affirmed.

FROMME, J., not participating.