(234 P.3d 19)
No. 103,009

WILLIE JEAN FARRAR and KEITH FARRAR, as cotrustees of the KEITH FARRAR REVOCABLE TRUST, dated October 22, 1999; JOHN ELDON GREGG and KEITH THOMAS GREGG, as cotrustees of the MARIE GREGG TRUST U/A, dated April 26, 1979, as amended; and THOMAS L. and PATRICIA A. LAHEY, individually and jointly, Appellees, v. MOBIL OIL CORPORATION, Appellant.

872

Opinion filed June 11, 2010.

*Shannon H. Ratliff*, of Ratliff Law Firm, P.L.L.C., of Austin, Texas, and *Richard C. Hite* and *Arthur S. Chalmers*, of Hite, Fanning, & Honeyman, L.L.P., of Wichita, for appellant.

*David G. Seely, Thomas D. Kitch, Gregory J. Stucky, Charles E. Millsap*, and *Daniel E. Lawrence*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, and *Erick E. Nordling*, of Kramer, Nordling & Nordling, LLC, of Hugoton, for appellees.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

GREENE, J.: ExxonMobil Oil Corporation, formally Mobil Oil Corporation (Mobil), appeals the district court's certification of a class action against it by Mobil's oil and gas lessors of Kansas minerals within the Hugoton Field, or by the successors in interest to such lessors, alleging breach of express and implied covenants by Mobil in the purported improper deduction of expenses from the payment of royalties to lessors. Mobil contends the district court abused its discretion in certifying a class because it failed to rigorously analyze the requirements of K.S.A. 60-223, that choice-of-law issues and variations in the circumstances surrounding execution of individual leases defeat the predominance of any common issues of law or fact, and that these individual issues would make

management of a class action difficult if not impossible. Concluding there was no abuse of discretion by the district court, we affirm the class certification and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initially sought to certify a class action on behalf of interest owners of minerals burdened by 1,200 leases on acreage within the areal extent of the Kansas Hugoton Field, whose gas flowed through the Bushton gathering system owned by ONEOK. The action alleged that Mobil had breached express and implied contractual obligations by deducting from royalty payments a pro-rata portion of the amount paid by Mobil to ONEOK for services necessary to gather the gas and transport it to the processing plant. These claims were expanded 3 years later to include claims of the additional mineral interest owners whose gas flowed through the Jayhawk Plant on the Hickok gathering system owned by Mobil. Counsel indicated at oral argument that the scope of the litigation now involves approximately 2,000 leases and more than 5,000 potential class members.

After Mobil's attempts to remove the action to federal court failed, discovery was conducted, the certification issue was joined, and the district court conducted an evidentiary hearing. Following posttrial submissions from the parties, the court entered its 21-page journal entry certifying a class action under K.S.A. 60-223(b)(3) and defining the class as:

" 'All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant insofar as such leases are productive of gas from above the base of the Panoma Council Grove Field, the gas from which has been subject to the Gathering Agreement, including the instrumentalities of the United States of America and federally chartered corporations, such as, but not limited to, the Farm Credit Bank of Wichita and the Federal Land Bank, but excluding the United States of America insofar as its mineral interests are managed by the Mineral Management Service.' "

On September 1, 2009, Mobil filed its application with this court to take an interlocutory appeal pursuant to K.S.A. 60-223(f). This court granted the application and stayed the district court pro-

ceedings pending resolution of this interlocutory appeal. Mobil then timely filed its notice of appeal.

## STANDARDS FOR CLASS CERTIFICATION AND APPELLATE REVIEW THEREOF

There are four statutory threshold prerequisites to bringing a class action in Kansas. A class action is only proper if (1) the number of class members is so large that joinder of all members is impracticable; (2) the class claims present common questions of fact or law; (3) the named parties' claims and defenses are representative of the claims and defenses of the other class members; and (4) the class representatives will fairly and adequately protect the interests of the class as a whole. K.S.A. 60-223(a). In shorthand, the threshold elements are identified as "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 778, 89 P.3d 908 (2004) (*Dragon I*).

In addition to meeting all the threshold elements, a putative class plaintiff must establish that a class action is maintainable under one of the three provisions of K.S.A. 60-223(b). Here, plaintiffs rely on the criteria of K.S.A. 60-223(b)(3), which state:

"[T]he court finds that the *questions of law or fact common to the members of the class predominate over any questions affecting only individual members,* and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *The matters pertinent to the findings include:* (A) The interest of the members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." (Emphasis added.)

Mobil's primary contentions focus on whether the common issues predominate over the individual issues framed by variations in applicable state law and by the individualized examination of lease formation. The predominance inquiry of Rule 23(b)(3) of the Federal Rules of Civil Procedure, which parallels K.S.A. 60-223(b)(3), tests whether proposed classes are sufficiently *cohesive* to warrant adjudication by representation, a standard "far more

demanding" than the commonality requirement of Fed R. Civ. Proc. 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997). Thus, predominance "require[s] more than a common claim." *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 187 (3d Cir. 2001).

Mobil also challenges the manageability of the action as a class action. The other prong under subsection (b)(3), "[c]ommonly referred to as 'manageability,' . . . encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974). The superiority requirement insures that no other available method of handling the claims has greater practical advantages. See *In re Univ. Serv. Fund Tel. Billing Practices Lit.*, 219 F.R.D. 661, 679 (D. Kan. 2004) (obvious alternative of individual suits by each plaintiff would be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation).

District courts have substantial discretion in deciding whether to certify a case as a class action. *Dragon I*, 277 Kan. at 779. Both state and federal class action rules require that a class should be certified only " 'after a rigorous analysis, that the prerequisites of [the statute] have been satisfied.' " *Dragon I*, 277 Kan. at 780 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61, 72 L. Ed. 2d 740, 102 S. Ct. 2364 [1982]). In conducting this "rigorous analysis," the district court may be required to look behind the plaintiffs' pleadings before resolving the certification question. The factual inquiry, however, does not require an actual determination of the merits of the plaintiffs' claims. *Dragon I*, 277 Kan. at 781; see *In re Univ. Serv.*, 219 F.R.D. at 679.

We review the certification of a class action for an abuse of the discretion as outlined above. A trial court abuses its discretion if it fails either to evaluate carefully the legitimacy of the plaintiffs' allegations and evidence supporting class treatment or to conduct a rigorous analysis to determine whether the statutory prerequisites have been satisfied. See *Dragon I*, 277 Kan. at 779-81. An abuse

of discretion occurs when the trial court goes outside the framework of legal standards or statutory limitations or fails to properly consider the factors given by the higher courts to guide the discretionary determination. *Dragon v. Vanguard Industries*, 282 Kan. 349, 354, 144 P.3d 1279 (2006) (*Dragon II*).

## SUMMARY OF CHALLENGES TO THE DISTRICT COURT'S CLASS CERTIFICATION

Mobil's challenge to the district court's class certification order is multifaceted. Mobil initially argues the district court "ignores the Kansas Supreme Court's directives in *Dragon I* and *Dragon II* by failing to hold Plaintiffs to their burden," by shifting that burden to Mobil and by failing to perform a rigorous analysis of the predominance and manageability elements.

More specifically, Mobil claims that the district court's apparent application of *lex fori*—the law of the forum—as the choice of law is contrary to Kansas caselaw because the subject royalty interests are governed by leases executed in many states, and the application of the law of the forum is unconstitutional as "to a nationwide class's claims." Moreover, Mobil argues that when the proper choice-of-law doctrine of *lex loci contractus* is considered, a host of legal questions framed by the action will be subject to various state laws, thus demonstrating that common questions of law do not predominate.

Additionally, Mobil claims that a proper reading of *Smith v. Amoco Production Company*, 272 Kan. 58, 75-76, 31 P.3d 255 (2001), means that implied covenants in oil and gas leases are implied in fact and not in law, thus requiring "an examination of the lease and its amending documents and the facts and circumstances surrounding these documents' execution" in order to determine whether the parties reached "the unspoken agreement specifically alleged." Thus, Mobil suggests that its duty to each purported class member is dependent upon an individualized factual inquiry "governed by thousands of leases and amending documents with materially different royalty clauses that were executed at various times under varying circumstances."

In summary and for purposes of our analysis, we address two major concerns in this appeal: (1) Did the district court abuse its discretion in failing to consider the proper choice-of-law doctrine and would application of the proper doctrine create such diversity of legal issues that statutory prerequisites for a class action would be defeated? and (2) Did the district court abuse its discretion in misconstruing controlling caselaw governing implied covenants of the oil and gas leases and would a proper construction and application of such caselaw result in a myriad of individualized factual inquiries that would inevitably defeat the statutory prerequisites for a class action?

## DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FAILING TO CONSIDER THE PROPER CHOICE-OF-LAW DOCTRINE FOR THIS LITIGATION?

Mobil contends the district court erred in addressing the choice-of-law issues raised in this case. Mobil argues that the district court improperly applied a *lex fori* approach to resolving the conflicts issue, which it claims is inconsistent with Kansas law. Further, Mobil contends such an application of lex fori to every class member's claim would be unconstitutional and that Kansas law requires the application of the *lex loci contractus* principle adopted by Kansas in some class actions framing contract disputes, requiring the application of the law where each lease was finalized. In a conflict-of-law situation, the determination of which state's law applies is a question of law over which this court has unlimited review. *Foundation Property Investments v. CTP*, 37 Kan. App. 2d 890, 894, 159 P.3d 1042 (2007), *aff'd* 286 Kan. 597, 186 P.3d 766 (2008).

The district court's findings and conclusions as to the proper choice of law included the following:

"The Kansas Supreme Court has applied Kansas Law to oil and gas leases located in Kansas, regardless of where they were executed. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 815, 105 S.Ct. 2965, 2976, 86 L.Ed.2d 628 (1985) ('*Shutts II*'); *Shutts v. Phillips Petroleum Co.*, 240 Kan. 764, Syl. ¶ 4, 732 P.2d 1286 (1987) ('*Shutts III*'); *Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 322, 894 P.2d 788 (1995). This practice is consistent with established law.

    . . . .

"3. Mobil and its royalty owners under Kansas leases have previously applied Kansas Law when resolving royalty payment disputes between them. *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 562 P.2d 1 (1977); *Matzen v. Cities Service Oil Co.*, 233 Kan. 846.

. . . .

"5. Mobil does not claim to have applied the law of any state other than Kansas when deciding how to pay its royalty owners for gas produced in Kansas.

"6. Mobil has admitted that Kansas law applies to this case.

"7. Mobil's expert who conducted a random review of Mobil's lease files saw no evidence among Mobil's documents to indicate that it applied non-Kansas law to the administration of its leases.

"The Court has carefully considered Mobil's position regarding choice of law, and finds that allowing this case to proceed as a class action will not result in the predominance of individual issues, nor render the case unmanageable."

## *The District Court's Choice-of-Law Selection*

Mobil's argument here borders on disingenuous. Although Mobil has characterized the district court's choice of law as *lex fori*, it is clear to this court that the choice-of-law doctrine selected and applied by the district court was *lex rei sitae*—the law of the place where the property is situated. Our Supreme Court has consistently applied the law of Kansas to disputes requiring the construction and enforcement of oil and gas leases covering Kansas real estate. In *Smith*, 272 Kan. 58; *Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 894 P.2d 788 (1995); *Shutts, v. Phillips Petroleum Co.*, 240 Kan. 764, Syl. ¶ 4, 732 P.2d 1286 (1987) (*Shutts III*); *Matzen v. Cities Service Oil Co.*, 233 Kan. 846, 667 P.2d 337 (1983); and *Lightcap v. Mobil Oil Corporation*, 221 Kan. 448, 562 P.2d 1 (1977), there were not any serious contentions made that any other state's law rather than Kansas law should govern the resolution of disputes involving oil and gas leases covering Kansas properties, and our Supreme Court either impliedly or expressly held that the law of the situs of the lease properties (*lex rei sitae*) should be applied in such cases. See also *Wortman v. Sun Oil Co.*, 241 Kan. 226, 232, 755 P.2d 488 (1987), *aff'd*, 486 U.S. 717, 100 L. Ed. 2d 743, 108 S. Ct. 256 (1988) (regarding statute of limitations application). In fact, the only occasion where our Supreme Court seems to have applied *lex fori* to a dispute such as this, *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 221-22, 679 P.2d 1159

(1984), the United States Supreme Court reversed the court on its choice-of-law doctrine in favor of the determination that the "laws of the States where the leases were located" should be applied. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 815-23, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985).

Application of the *lex rei sitae* choice of law to resolve disputes in the construction and enforcement of oil and gas leasehold interests is not unique to Kansas. Courts in other oil and gas producing states apply *lex rei sitae* to disputes regarding the payment of royalties on oil and gas produced from leases covering acreage located within their boundaries. See, *e.g.*, *Exxon Mobil v. Ala. Dept. of Conservation*, 986 So. 2d 1093 (Ala. 2007); *SEECO, Inc. v. Hales*, 22 S.W.3d 157 (Ark. 2000); *Atlantic Richfield Co. v. State*, 214 Cal. App. 3d 533, 262 Cal. Rptr. 683 (1989), *rev. denied* December 14, 1989; *Garman v. Conoco, Inc.*, 886 P.2d 652 (Colo. 1994); *Duhe v. Texaco, Inc.*, 779 So. 2d 1070 (La. App.), *writ denied* 791 So. 2d 637 (La. 2001); *Schroeder v. Terra Energy*, 223 Mich. App. 176, 566 N.W.2d 887 (1997), *appeal denied* 458 Mich. 863 (1998); *Darr v. Eldridge*, 66 N.M. 260, 346 P.2d 1041 (1959); *West v. Alpar Resources, Inc.*, 298 N.W.2d 484 (N.D. 1980); *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203 (Okla. 1998); *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996); *Flying Diamond Oil v. Newton Sheep Co.*, 776 P.2d 618 (Utah 1989); *Wellman v. Energy Resources, Inc.*, 557 S.E.2d 254 (W. Va. 2001); *Cabot Oil & Gas Corp. v. Followill*, 93 P.3d 238 (Wyo. 2004).

Mobil argues that in contract cases Kansas courts have generally applied the rule of *lex loci contractus*—the law of the place where the contract was made controls. See *Dragon I*, 277 Kan. at 784; *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 534-35, 28 P.3d 1033, *rev. denied* 272 Kan. 1419 (2001); see also *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 209-13, 4 P.3d 1149 (2000) (determining where contract was made); Restatement (First) of Conflicts of Law § 332 (1934). The Kansas courts, on a few occasions, also have applied the law of the place of contract performance in determining issues related to performance of the contract. See *Sykes v. Bank*, 78 Kan. 688, 689-90, 98 P. 206 (1908) (in determining

whether promissory note was negotiable, law of place of perform-ance governs); *Aselco Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, Syl. ¶ 7, 21 P.3d 1011, *rev. denied* 272 Kan. 1417 (2001) (applying law of place of performance to decide whether insurer had a duty to defend).

In support of its contention that *lex loci contractus* is the proper choice-of-law principle to apply in a case requiring the construction and enforcement of oil and gas leases, Mobil cites *Roberts v. Chesapeake Operating, Inc.*, 426 F. Supp. 2d 1203 (D. Kan. 2006), and a line of other cases including *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 630 P.2d 1107 (1981). Mobil also cites *Coral Prod. Corp. v. Central Resources*, 273 Neb. 379, 730 N.W.2d 357 (2007), a Nebraska oil and gas case applying *lex loci contractus*.

Mobil's reliance on these cases is not persuasive. First, while *Roberts* cited the *lex loci contractus* rule in a case where mineral estate owners sued for additional royalties on Kansas leaseholds, that language is mere dicta. After citing the *lex loci contractus* rule, the federal district court in *Roberts* noted that the parties failed to provide any facts as to where the contract was formed and both parties agreed in the pretrial order that Kansas contract law should govern; accordingly, the court did not determine where the contract was formed and simply applied Kansas law by default. 426 F. Supp. 2d at 1206-07.

Mobil's reference to *Sidwell* also is unhelpful. *Sidwell* and the other cases cited by Mobil merely applied general contract prin-ciples to oil and gas leases, but *none of these cases involved choice-of-law issues*. Thus, they do not undermine *Shutts III* or *Stern-berger* as to which *choice-of-law principles* apply when litigation frames issues surrounding construction and performance of oil and gas leases covering Kansas acreage.

Mobil's citation to *Coral Production*, 273 Neb. 379, also provides little assistance to Mobil's arguments. *Coral Production* involved a dispute between various oil companies that were fractional interest owners of oil and gas interests and focused on the parties' rights to purchase assets of the lease operator. One party argued Ne-braska law should apply because the case involved *eventual* own-ership in real estate in Nebraska. The court held the dispute in-

volved the meaning and construction of an operating agreement which " ' "normally is not intended to affect the ownership of the minerals or the rights to produce." ' [Citation omitted.]" 273 Neb. at 389-90. In the same opinion, however, the court recognized under its own precedent that oil and gas leases have many of the same components as real estate interests and that an interest in an oil and gas lease is an interest in real property to the extent that it grants the lessee the right to remove minerals from the land. 273 Neb. at 389. Thus, *Coral Production* does not support Mobil's arguments.

Indeed, Mobil admitted in answers to interrogatories that Kansas law was a driving factor in determining how it should deduct expenses in calculating royalty payments—the essence of this dispute. Mobil was asked for each reason why it contended "it is entitled to take each such royalty deduction," and it responded in part:

*"Under these [different] leases and Kansas law*, if the gas is not sold at the wellhead, the market value of gas at the well may be determined by deducting from the amount for which gas is sold off the leased premises the reasonable cost of getting the gas from the well to the point of sale." (Emphasis added.)

For all these reasons, the district court did not err in holding that the doctrine of *lex rei sitae* governs the claims of the plaintiffs' class and in rejecting Mobil's contention that a proper application of *lex loci contractus* would defeat the prerequisites for maintenance of a class action because of the need to apply varying and disparate laws of numerous states where the instruments were executed.

### Mobil's Constitutional Challenge

Mobil's challenge to the constitutionality of applying Kansas law here is also rather disingenuous. For a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant contact or significant aggregation of contacts, creating state interests, such that the choice of its law is neither arbitrary nor fundamentally unfair. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 101 S. Ct. 633 (1981). There is simply no question that Kansas has such significant contacts in

applying its law to the enforcement of oil and gas leases on properties within its own boundaries.

Mobil's constitutional argument is fundamentally premised on the suggestion that the district court applied a *lex fori* approach to a nationwide class action. The premise is false in two regards. As already discussed, we do not believe the court applied the *lex fori* doctrine. Moreover, this action is *not* a typical nationwide class action; instead, it involves *only* the enforcement of provisions in oil and gas leases covering Kansas realty. Application of Kansas law to such an action cannot be said to be unconstitutional.

First, we are aware of no authority holding that it is unconstitutional to apply the law where real property is located to disputes surrounding enforcement of lease obligations. See 16 Am Jur. 2d, Conflict of Laws § 24. Although an oil and gas lease is generally classified as personalty in Kansas, see, *e.g.*, 1 Pierce, Kansas Oil and Gas Handbook § 4.11, p. 4-15 (1991), Kansas has recognized that the rights to future royalty payments pursuant to such leases are essentially part of the lessor's realty interests:

"The lessor's rights to royalty do not originate with the lease. The lessor reserves his rights to royalty out of the grant. His rights arise from his ownership of the real estate rather than the lease and are therefore interests in real estate until the oil and gas are captured. It follows then that future royalty (unaccrued royalty) is a part of the real estate of the lessor; it is uncaptured and of an undetermined amount or location." *In re Estate of Sellens*, 7 Kan. App. 2d 48, 51, 637 P.2d 483 (1981), *rev. denied* 230 Kan. 818 (1982).

Indeed, oil and gas leasehold interests are to be treated as real property under the statutes pertaining to recordation of instruments conveying real estate. See K.S.A. 58-2221(b); *Ingram v. Ingram*, 214 Kan. 415, 420-21, 521 P.2d 254 (1974). In any event, an oil and gas lease conveys a license to explore, or a " 'profit á prendre.' " *State, ex rel., v. Board of Regents*, 176 Kan. 179, 190, 269 P.2d 425 (1954). Whether the lessor's rights to royalty are technically classified as personalty or realty, it is difficult to imagine a more intimate contact with Kansas than the construction and enforcement of instruments that license the exploration for Kansas minerals.

We conclude that the allegations of the plaintiffs' class implicate significant contacts with Kansas and there is no arbitrariness or unfairness in the application of Kansas law in determining how the subject oil and gas leases should be construed and enforced. Mobil's constitutional challenge to the district court's choice of law is rejected.

### Did the District Court Abuse its Discretion in Misconstruing Controlling Caselaw Governing Implied Covenants of the Oil and Gas Leases?

Mobil also argues class action certification was improper because individual issues would predominate over the common questions of law or fact. Mobil argues that to determine whether there was a breach of an implied covenant within the leases would require evaluating each of the individual leases and their various amendments, together with an individualized examination of the factual circumstances and intent of the parties at the time each of the lease instruments were executed. As argued by Mobil, the controlling caselaw means "the facts and circumstances surrounding each particular lease must be analyzed to determine if the alleged implied obligation may be inferred" and this includes the express language of the lease, other relevant writings, and "all the circumstances and conditions which confronted the parties when the contract was formed."

The district court rejected Mobil's contention, essentially finding that individualized examination of lease variations and circumstances surrounding lease formation was unnecessary:

"This Court does not agree with Mobil's contention that the Plaintiffs must present evidence that the lessee and the lessor intended to require the lessee to fulfill the implied covenant to market minerals produced.

"Most of the leases in the Hugoton Gas Field were signed in the 1930's and 1940's. Those who executed those leases, either as a lessee or a lessor, are long dead.

"There is an implied covenant to market minerals produced under all oil and gas leases in Kansas.

"To claim that there needs to be evidence produced to prove that at the time of execution of the lease, that the parties intended the lessee to fulfill the implied covenant is an abstract absurdity.

"This Court believes Mobil misapplies the law of *Smith v. Amoco*, supra.

"Mobil has admitted that the terms of the leases speak for themselves. When the leases were executed, if Mobil or its predecessor wished to avoid the implied covenant, they were obligated to include clear and express language to this effect in the royalty instrument itself. *Gilmore v. Superior Oil*, 192 Kan. at 391, 388 P.2d at 605.

"The Court has considered Mobil's objection based on its theory of how the implied covenant must be established in each lease and finds that its pursuit of such defense will not result in the predominance of individual issues or otherwise render the case unmanageable.

. . . .

"Mobil as the lessee-producer, has treated all of its royalty owners the same way, regardless of any variations in the lease language, and that makes this proposed class a manageable class action."

Mobil's challenge is based solely on its reading of our Supreme Court's opinion in *Smith v. Amoco Production Company*, 272 Kan. 58, 31 P.3d 255 (2001), and specifically the court's holding that the implied covenant to market gas produced at reasonable terms within a reasonable time is *implied in fact* rather than in law. There seems to be no dispute that Kansas has long recognized the duty of the lessee under an oil and gas lease not only to explore for and develop oil and gas production but to use reasonable diligence in finding a market for the product. The implied obligation is to market the produced minerals at reasonable terms within a reasonable time following production. See *Robbins v. Chevron U.S.A., Inc.*, 246 Kan. 125, 131, 785 P.2d 1010 (1990) (also citing K.S.A. 55-223). Given *Smith*, however, Mobil argues that whether an implied duty is inherent in each of the subject leases requires a detailed evaluation of each individual lease and the circumstances of lease formation to determine the intent of the parties.

No owner of a Kansas royalty interest has been required to prove a specific intent to include an implied covenant in an oil and gas lease. *Robbins*, 246 Kan. at 131 ("We have long held that there is an implied obligation to market oil and gas under a lease agreement."); *Vonfeldt v. Hanes*, 196 Kan. 719, 722, 414 P.2d 7 (1996) (" '[W]here the lease itself does not contain express provisions creating duties in the lessee to drill exploratory wells [and] to . . . market the product if oil and gas are discovered in paying quantities, . . . the law imposes such duties upon the lessee under the

doctrine of implied covenants.' "); *Gilmore v. Superior Oil Co.*, 192 Kan. 388, 392, 388 P.2d 602 (1964) ("Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product."); see *Temple v. Continental Oil Co.*, 182 Kan. 213, 234, 320 P.2d 1039, *reh. denied* 183 Kan. 471, 328 P.2d 358 (1958); *Molter v. Lewis*, 156 Kan. 544, 549, 134 P.2d 404 (1943); *Greenwood v. Texas-Interstate P. L. Co.*, 143 Kan. 686, 690, 56 P.2d 431 (1936); *Thiessen v. Weber*, 128 Kan. 556, 559-60, 282 P. 190 (1929); *Webb v. Croft*, 120 Kan. 654, 657, 244 P. 1033 (1926); *Cole v. Butler*, 103 Kan. 419, 421, 173 P. 978 (1918), *overruled in part on other grounds Brinkman v. Empire Gas and Fuel Co.*, 120 Kan. 602, 245 P. 107 (1926); see also *Shell Petroleum Corporation v. Shore*, 72 F.2d 193, 194 (10th Cir. 1934) (lease contained implied covenant to develop and protect premises). Some implied covenants in oil and gas leases have been codified in Kansas. See, *e.g.*, K.S.A. 55-223 *et seq*.

Under Kansas law, an implied covenant can only be defeated by express language showing a contrary intent. *Christiansen v. Virginia Drilling Co.*, 170 Kan. 355, Syl. ¶ 1, 226 P.2d 263 (1951) ("In the absence of provision to the contrary, there is an implied covenant to develop with reasonable diligence, an oil and gas lease in furtherance of the interests of both the lessor and the lessee."); *Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 372, 133 P.2d 95, *aff'd on rehearing* 156 Kan. 722, 137 P.2d 139 (1943) ("It is well established that in such a case there in an implied covenant to develop further, unless otherwise provided in the instrument itself."); see also *Ashland Oil and Refining Co. v. Cities Service Gas Co.*, 462 F.2d 204, 213 n.9 (10th Cir. 1972) ("[A]bsent any express provisions negativing such an implication, Kansas law will imply a covenant to diligently explore, drill, produce and market the product in oil and gas leases.").

Mobil contends that the Supreme Court effectively overruled all of this precedent in *Smith*. The limited issue in *Smith*, however, was whether the implied covenant to market gas produced from the leasehold was implied in fact or implied in law *for purposes of selecting the proper statute of limitations*. The court concluded the

covenant was implied in fact, resulting in the application of the 5-year statute of limitations for express contracts. 272 Kan. at 60. Although the court discussed the countervailing authorities addressing whether implied covenants in these leases are implied in fact versus implied in law, the court restricted its discussion, noting that

" '[i]n those instances in which the court has been called upon to determine *which statute of limitations should be applied* to actions on the implied covenants, *it has been held that the statute governing the bringing of actions on written contracts is applicable*.' (Emphasis added.) 5 Kuntz, A Treatise on the Law of Oil and Gas § 54.3(b), pp. 9-10 (1978)." 272 Kan at 74.

Likewise, the court cited another authority, noting: " 'Does it make any difference whether covenants are implied in fact or in law? Judging from the reported cases, the answer seems to be, not often and not much.' [Citation omitted.]" 272 Kan. at 73.

The *Smith* opinion is limited to holding that implied covenants are implied in fact for purposes of the statute of limitations. The opinion contains no hint that the court intended to overrule in any way prior cases which have not required proof of a factual intent for implied covenants to exist. And most importantly, if this were the case, *Smith* would have required a very different remand that may well have destroyed the prerequisites for a class action. Instead, the remand directed only a finding on whether the implied covenants were breached. 272 Kan. at 85.

A federal court of appeals long ago in a very celebrated and still viable case applying Kansas law suggested that implied covenants within oil and gas leases are not so much a function of intent but rather of the obligation inherent in the language of the contract:

"Implication is but another name for intention, and if it arises from the language of the contract when considered in its entirety, and is not gathered from the mere expectations of one or both of the parties, it is controlling." *Brewster v. Lanyon Zinc Co.*, 140 F. 801, 809 (8th Cir. 1905) (noted for its "continued vitality" in 5 Williams & Meyers, Oil and Gas Law, §§ 802, 806 [2009]).

Treatise law is in agreement—specific intentions of the parties to an oil and gas lease are of no legal moment to the existence of covenants implied from the express language of the contract:

"When it comes to the application of an implied covenant to a particular dispute, courts may move some distance away from the fact of parties' intention and closer to the law as an instrument for enforcing ethical norms. Thus when the lessor sues the lessee for his [or her] failure to use sandfracing to increase production, he may claim as a fact that he expected diligent efforts to be made to maximize production, but he can hardly claim that he expected the use of sandfracing when the lease antedated the invention of the process." 5 Williams & Meyers, Oil and Gas Law § 803, p. 24.

Indeed, one need not examine parole evidence, surrounding circumstances, or extant industry practice to determine whether such covenants should be implied. This has simply never been the law or practice in Kansas.

Thus, Mobil's contentions appear to read far too much into the *Smith* opinion. No direct language in *Smith* indicates that the implied covenants which have been read into oil and gas leases for years are hereafter to be proven to be within the subjective intent of the parties at the times the leases were entered into. As before, implied covenants are essentially presumed to be the intent of both parties and need not be proven by reviewing the specific intent of the executing parties; individualized proof of intent has never been required. We do not see that *Smith* intended to change this practice when its focus was solely on the statute of limitations issue. And most importantly, had the court been interested in an examination of individualized lease variations and circumstances surrounding formation, the remand would have been far different than ordered. See 272 Kan. at 60-61.

Mobil's suggestion that such an individualized examination defeats the prerequisites for class action has been characterized as the *de rigeur* defense of such class actions and rejected by most courts. See McArthur, *A Minority of One? The Reasons to Reject the Texas Supreme Court's Recent Abandonment of the Duty to Market in Market-Value Leases*, 37 Tex. Tech. L.R. 271 (Winter 2005). With Texas notably the stand-out nonconformist jurisdiction, most courts have rejected this defense when faced with remarkably similar facts. See, *e.g.*, *Duhe v. Texaco, Inc.*, 779 So. 2d 1070, 1082 (La. App. 2001) (class certified despite each royalty owner having a different lease, noting that "the underpayment was

systemic, through one common course of conduct, giving rise to a common nucleus of operative facts"); *Bice v. Petro-Hunt, L.L.C.,* 681 N.W.2d 74, 77-78 (N.D. 2004) (standardized conduct toward the royalty owners presents a common nucleus of operative facts even if differences in lease terms); *Shockey v. Chevron U.S.A.,* No. 98,063 (Okla. App., unpublished opinion filed April 4, 2003) (class certified despite 45 to 50 variations in lease language).

We align our court with those of Louisiana, North Dakota, and Oklahoma in holding that in a purported class action claiming improper calculation of royalties, there is no need to examine individual lease formation and the intent of the parties thereto for purposes of determining predominance of common issues or manageability in certification proceedings where there has been shown a systemic common course of conduct by an oil and gas lessee in calculating royalties payable. We agree with the district court and its rationale in rejecting Mobil's argument that a need for individualized examination of lease formation and language defeats predominance of common issues or otherwise renders this case unmanageable as a class action.

Having so held, we are not suggesting that all purported class members can be treated identically. Although Mobil does not seem to rely on the obvious major categories of potential class members in challenging the district court's certification order, it was noted by the district court and it appears to this court that those for whom a 1984 settlement is applicable will likely need to be treated differently than those for whom the settlement is not applicable. Moreover, the record reflects that among the leases at issue, some were executed or amended recently to expressly abrogate the implied covenant that underlies the plaintiffs' class allegations. These and other easily defined categories of potential plaintiffs, however, need not bar initial class certification.

Class action certification is discretionary with the trial court. *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir. 1982). A class may be altered, expanded, subdivided or abandoned as a case develops. Class actions may be amended, limited, or subclasses of plaintiffs may be established if needed. See 3 Conte &

Newberg, Newberg on Class Actions §7.47, pp. 154-55 (4th ed. 2002).

In summary, we conclude the district court rigorously analyzed whether the prerequisites of the statute were satisfied. Especially with regard to the two areas challenged on appeal, the district court took the proper factors into account in the proper way and made a decision within the legal applicable legal standards to certify the class action. There was no abuse of discretion in the selection of choice of law principles or in rejecting an individualized examination of the circumstances surrounding each of the leases in order to determine whether implied covenants were intended. It is the judgment of this court that the district court performed a particularly comprehensive review of the statutory prerequisites, gave consideration to Mobil's views on predominance and manageability, entered findings supported by the evidence, and made conclusions of law that were entirely sound and fully explained in the final journal entry of judgment.

Affirmed.